F. W. MYERS COMPANY, INC. (F. H. LEGGETT & Co.) v. UNITED STATES

No. 7646.—Invoices dated Toronto, Canada, May 11, 1945, etc.
Certified May 14, 1945, etc.
Entered at Port Huron, Mich., May 17, 1945, etc.
Entry Nos. A–6372; A–6495; A–6630.

(Decided January 17, 1949)

*Marlow & Hines* (*John D. Rode*, associate counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the defendant.

CLINE, Judge: These are appeals for reappraisement of canned pumpkin exported from Canada on or about May 16, May 23, and May 29, 1945. The merchandise was invoiced at $1 (United States currency) per dozen cans, entered at $1.05 (Canadian currency) per dozen cans, plus sales tax, and appraised at $1.30 (Canadian currency) per dozen cans, less 2½ per centum cash discount, less one-fourth of 1 per centum for leaks and swells, plus 8 per centum.

Plaintiff claims that there is no foreign market value on the ground that the Canadian market is controlled; that the merchandise is properly dutiable on the basis of export value, and that the invoice price represents the export value. The Government claims that the appraised value, which was based upon foreign market value, is the correct dutiable value.

At the trial plaintiff called Edward H. Spencer, who testified that he was employed by F. H. Leggett & Co., the importer herein, as a buyer of canned vegetables; that the merchandise herein was exported by Canada Packers, Ltd.; that the prices paid for the merchandise were $1.05 (Canadian currency) per dozen cans and $1 (United States currency) per dozen cans; that $1.05 in Canadian currency equalled about 95 cents in United States currency at the time; that F. H. Leggett & Co. made 8 or 10 other purchases of canned pumpkin from Canada Packers, Ltd., and several purchases from other dealers; that the prices paid were either $1.05 (Canadian currency) per dozen

cans or $1 (United States currency) per dozen cans; that Toronto was one of the principal markets for Canadian canned pumpkin; that from February to July 1945, $1 (United States currency) and $1.05 (Canadian currency) were the prices at which canned pumpkin was freely offered to F. H. Leggett & Co.

An affidavit of Harry Grimson, Canned Food Sales Manager of Canada Packers, Ltd., was received in evidence as plaintiff's exhibit 2. It is stated therein that the affiant is familiar with market conditions in Canada for canned pumpkin and with the prices charged by Canada Packers, Ltd., and other dealers and packers; that Toronto is one of the principal markets in Canada for canned pumpkin; that during the months of April, May, and June 1945, canned pumpkin, such as or similar to that involved herein, was offered and sold by Canada Packers, Ltd., to all purchasers in the principal markets of Canada in the ordinary course of trade for exportation to the United States at $1 (United States currency) per dozen cans in carload quantities; that on such sales no Canadian sales tax was assessable; that during this period such or similar merchandise was neither offered nor sold for exportation to the United States in less than carload quantities. The affidavit also contains the following:

> * * * that during the months of April, May and June 1945 such or similar canned pumpkin was offered for sale and sold by Canada Packers Ltd. as canners to all wholesalers in Canada, including wholesale branches of Canada Packers Ltd. in any quantities at a price of $1.05 a dozen cans, less 1½% cost [sic] discount, and less ¼ of 1% for leaks and swells; that this price was the ceiling price allowed by the Wartime Prices and Trade Board of Canada on sales by Canners to Wholesalers; that on such sales the 8% sales tax was payable by the purchasers; that during this same period Canada Packers Ltd. as Wholesalers offered and sold such or similar canned pumpkin to all Retailers in Canada in any quantities at a price of $1.30 a dozen cans; that such price was the ceiling price allowed by the Waretime [sic] Prices and Trade Board of Canada on sales by Wholesalers to Retailers; that on such sales the sales tax was included in the selling price; that during the period stated above all canners, wholesalers and manufacturers were subject to ceiling prices as prescribed by the Wartime Prices and Trade Board of Canada; that consequently there was no price at which such or similar canned pumpkin was freely offered for sale to all purchasers, since the prices were controlled by the said Wartime Prices and Trade Board of Canada depening [sic] upon the type of purchaser; that during the period in question neither Canada Packers Ltd. or any other person firm or corporation freely offered or sold, or was permitted to offer or sell such or similar canned pumpkin to all purchasers without such restrictions; * * *.

Defendant introduced into evidence a report of Treasury Representative F. H. Bunting, dated November 30, 1945, as defendant's exhibit 3. According to this report, Mr. Bunting interviewed H. Griscom, sales manager, Food Department,[1] A. H. McAlpine, manager

---

[1] Apparently this is the same person as "Harry Grimson," who executed the affidavit, plaintiff's exhibit 2. See defendant's brief, page 3.

Canning Department, and H. H. Ayer, general traffic manager, of Canada Packers, Ltd., examined some of the books and records of the concern, and obtained the following information: That Canada Packers, Ltd., offered canned pumpkin in carlot quantities to United States customers at $1 (United States currency) per dozen cans; that Canada Packers, Ltd., paid a selling commission of 5 cents a dozen cans to grocery brokers on orders received from United States customers; that there was no specified wholesale quantity, but shipments to the United States were generally in carlots; that Canada Packers, Ltd., sold for home consumption to wholesalers, chain stores, department stores, and dealers; that the merchandise was sold to Canadian wholesalers and jobbers at $1.05 per dozen tins, plus 8 per centum sales tax; "that the wholesaler's maximum price would be $1.134 (sales tax included) plus 10% of the selling price (11% of cost) or $1.2587 per dozen, f. o. b. factory"; that Canada Packers, Ltd., sold to the retail trade (Canadian dealers) at $1.30 per dozen; that a cash discount of 1½ per centum and an allowance of one-fourth of 1 per centum for leaks and swells are granted; that there is no specific wholesale quantity; that the 8 per centum sales tax applies unless the sale is to a buyer holding a sales tax license. The report quotes from a letter from H. H. Ayer, stating that canned pumpkin was freely offered in carload quantities to anyone in Canada at a price of $1.05 (Canadian currency) a dozen cans; that no carload sales were made in Canada; that of 27,200 cases of the fall pack of 1944, 23,735 were sold to purchasers in the United States and the balance was sold in lots of from one to five cases to retail butchers at $1.30 per dozen. The report concludes with the statement that Mr. Griscom advised the writer on September 11, 1945, that the greatest number of sales during 1945 was to Canadian dealers at $1.30 per dozen.

It is claimed that the foreign market was controlled in that prices were fixed by the Canadian Government. There is no evidence of any restrictions on use, disposition, or resale of this merchandise. Therefore, the mere fixing of the initial selling prices does not prevent the finding of foreign value. *United States* v. *Michele Diagonale*, 22 C. C. P. A. 517, T. D. 47497.

It is further claimed that the merchandise was not freely offered for sale to *all* purchasers at the same price. According to the affidavit of Harry Grimson, the merchandise was offered to all *wholesalers* at the ceiling price of $1.05 (Canadian currency) a dozen, less 1½ per centum cash discount and one-fourth of 1 per centum for leaks and swells, and to all *retailers* at the ceiling price of $1.30 per dozen. However, the report of Treasury Representative Bunting makes no mention of ceiling prices fixed by the Canadian Government. According to the report, Mr. Griscom stated that the merchandise was sold to wholesalers or jobbers at $1.05 a dozen and to retailers at $1.30 a

dozen. However, the letter from Mr. Ayer stated that the merchandise was freely offered in *carload quantities* at $1.05 per dozen, but no sales were made, and that from the fall pack of 1944 the only sales in Canada were in quantities of one to five cases at $1.30 per dozen. There is no indication as to the dates when these sales were made. The report refers also to a statement of Mr. Griscom that the greatest number of sales during 1945 was to Canadian dealers at $1.30 a dozen.

It is impossible to tell from this evidence whether sales or offers to sell were made to all wholesalers at a price of $1.05 a dozen, the claimed ceiling price, or whether such price was offered only to those who would buy in carload lots. While it is stated that the merchandise was offered to wholesalers at $1.05 a dozen and to retailers at $1.30 a dozen, it is not clear that *all* purchasers could not have bought at $1.30 a dozen. The only actual sales in Canada mentioned in either the affidavit or the report were at $1.30 a dozen, and there is a statement in the report that the greatest number of sales was at $1.30. In *Adolph Goldmark & Sons Corp.* v. *United States*, 22 C. C. P. A. 358, T. D. 47378, the merchandise was offered at varying discounts to wholesalers, semiwholesalers, and retailers. It was shown that the sales to retail stores were greater in number than the sales to all other classes of purchasers and that everyone could buy at the price offered to retailers, and it was held that the dutiable foreign value was the price at which the merchandise was offered to retail stores.

On the record as it stands I find the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, to be the proper basis for the determination of the value of the merchandise here involved, and that such value is the appraised value.

Judgment will be rendered accordingly.