F. W. MYERS COMPANY, INC. (F. H. LEGGETT & Co.) *v.* UNITED STATES

**No. 8062.**—Entered at Port Huron, Mich.
Entry Nos. A–6372; A–6495; A–6630.

First Division, Appellate Term

(Decided November 19, 1951)

*Marlow & Hines; John D. Rode,* associate counsel; for the appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (*Guy Gilbert Ribaudo,* special attorney), for the appellee.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., concurring; OLIVER, C. J., dissenting

COLE, Judge: Canned pumpkin, exported from Canada in May 1945, was entered at the port of Detroit, Mich., where it was appraised on the basis of foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), at $1.30 (Canadian currency) per dozen tins, less 2½ per centum cash discount, less one-fourth of 1 per centum discount for leaks and swells, plus 8 per centum Canadian sales tax.

The case is before us at this time as a review of *F. W. Myers Company, Inc. (F. H. Leggett & Co.)* v. *United States*, 22 Cust. Ct. 368, Reap. Dec. 7646, in which the appraised value was affirmed.

The trial judge, in a well-reasoned opinion, set forth a complete and an accurate analysis of the proof offered by the respective parties. Pertinent phases thereof will be referred to in our disposition of the issues.

Here, as in the court below, appellant claims that statutory foreign value is removed from consideration because at the time of exportation of the present merchandise the Canadian market was controlled, and that therefore export value, as represented by the invoice price of $1 (United States currency) per dozen tins, is the proper basis for appraisement.

As support for the contention that the foreign market was controlled, appellant points to the affidavit, exhibit 2, executed by the Canned Food Sales Manager of Canada Packers, Ltd., Canadian exporter of the shipments under consideration, wherein the witness states that at the time of exportation of the canned pumpkin in question, such or similar merchandise "was offered for sale and sold by Canada Packers Ltd. as canners to all wholesalers in Canada" in any quantities at a price of $1.05 a dozen cans, less certain discounts and plus the Canadian sales tax of 8 per centum; that "during this same period Canada Packers Ltd. as Wholesalers offered and sold such or similar canned pumpkin to all Retailers in Canada in any quantities at a price of $1.30 a dozen cans"; and that such prices were ceiling prices "allowed by the Wartime Prices and Trade Board of Canada."

Giving to the foregoing testimony a view most favorable toward appellant's position, it can be said that the Wartime Prices and Trade Board of Canada established a price schedule, setting forth ceiling prices under different categories. However, merely fixing such initial prices did not destroy a statutory foreign value for the merchandise in question and will not bar a finding of such value as contemplated by section 402 (c), as amended, *supra*. *United States* v. *Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497. That the cited case fixed minimum prices, while maximum prices were established for the present merchandise, is not material. The principle applied there has equal force and effect here.

A foreign market has been held to be a controlled one where sales for home consumption were conditional upon the use, resale, or disposition of the merchandise. *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115. The *Graham & Zenger, Inc.* case, *supra*, emphasizes the principle in this statement: "The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its resale,

use or other disposition, regardless of the source of such restraint." In this case, none of those controls was exercised over sales for home consumption in the Canadian market. On the contrary, the merchandise was freely offered without the restrictive elements that have been consistently recognized as factors removing foreign value from consideration.

The Treasury representative's report, exhibit 3, presents the activities of the Canadian exporter in the principal market of Toronto, on sales for home consumption, in a somewhat contradictory light from the merchandising procedure given in appellant's affidavit, exhibit 2, *supra*, particularly as the report quotes from a letter received from the foreign exporter's traffic manager, stating that canned pumpkin was freely offered in carload quantities to anyone in Canada at a price of $1.05 (Canadian currency) a dozen cans, although no sale in such quantity was ever made in Canada; and that of 27,200 cases of the fall pack of 1944, all were sold to purchasers in the United States, except 3,465 that were sold in lots of from one to five cases to retail butchers at $1.30 per dozen. No mention is made about ceiling prices fixed by any Canadian wartime agency, and the report concludes with a statement to the effect that during 1945, the greatest number of sales was to Canadian dealers at $1.30 per dozen.

Based upon this record which—and this is to be emphasized—is void of any proof, oral or documentary, concerning rules, regulations, or procedure, issued by the Wartime Prices and Trade Board of Canada, we agree with the trial judge in the statement that "it is not clear that *all* purchasers could not have bought at $1.30 a dozen." Accordingly, we find foreign value to be the proper basis for appraisement of the merchandise in question, and hold such value to be the appraised value, less the Canadian sales tax of 8 per centum, which appellee concedes has no application.

For the foregoing reasons, we find as matter of fact:

(1) That the merchandise in question consists of canned pumpkin exported from Canada.

(2) That at the time of exportation thereof, such or similar merchandise was freely offered for sale and sold in the principal market of Toronto, Canada, for home consumption, without restriction as to resale, use, or disposition.

(3) That foreign value, section 402 (c), as amended, *supra*, is the proper basis for appraisement of the merchandise in question.

Accordingly, we hold as matter of law:

(1) That the foreign market at the time of exportation of the canned pumpkin in question was not a controlled market.

(2) That the statutory foreign value for the present merchandise is the appraised value, as held by the trial judge, less the Canadian sales tax of 8 per centum.

To the extent indicated, the judgment of the trial judge is modified. Judgment will be rendered accordingly.

### CONCURRING OPINION

MOLLISON, Judge: I agree with the conclusion reached by my colleague, Judge Cole, that the Canadian market, in which price schedules or ceiling prices were established by the Wartime Prices and Trade Board of Canada for sale and purchase of merchandise, including canned pumpkin, for different categories and at different levels or stages of distribution, was not a controlled or restricted foreign market to the extent that the canned pumpkin bought and sold in said market was not freely sold or offered for sale for home consumption to all purchasers in the principal markets of Canada in the usual wholesale quantities and in the ordinary course of trade as provided by section 402 (c) of the Tariff Act of 1930, as amended (19 U. S. C. § 1402 (c)).

Foreign market value, in my opinion, as defined in the statute, was intended to embrace or encompass those normal and customary conditions and circumstances which have been established by a foreign governmental authority for the buying and selling of merchandise by all individuals participating in its trade and commerce. This record shows that canned pumpkin was freely sold or offered for sale to all purchasers in the various categories according to the ceiling prices established therefor by the governmental agency, i. e., the Wartime Prices and Trade Board. Anyone was free to sell or offer to sell and buy at the established ceiling prices for the various categories or levels of distribution, and this was the normal and usual, and, in fact, the only, condition under which domestic trade in Canada might be lawfully conducted. Buying and selling within the scope and framework and in conformity with the established ceiling prices was the ordinary course of trade in Canada insofar as canned pumpkin was concerned.

I am of the further opinion that the record does not contain proof sufficient to overcome the presumption of correctness attaching to the appraisement made, except insofar as the matter of the 8 per centum Canadian sales tax is concerned, and I therefore concur in the decision modifying the judgment of the court below.

### DISSENTING OPINION

OLIVER, Chief Judge: This opinion was originally prepared by me as the opinion of the court, but as my associates do not agree with me, it is now being filed as a dissenting opinion with only minor and necessary changes.

The involved merchandise consists of three shipments of canned pumpkin exported from Canada during the month of May 1945 by

Canada Packers, Ltd. In each case, the merchandise was invoiced at $1 (United States currency) per dozen tins, entered at $1.05 (Canadian currency) per dozen tins, plus 8 per centum Canadian sales tax, and appraised on the basis of foreign value at $1.30 (Canadian currency) per dozen tins, less 2½ per centum cash discount, less one-fourth of 1 per centum discount for leaks and swells, plus 8 per centum Canadian sales tax.

The Government has conceded that in no event does the Canadian sales tax apply.

The contention by the plaintiff-appellant, both before the trial court and here, is that there was no price at which such canned pumpkin was freely offered for sale to *all* purchasers in Canada, but that the merchandise should be valued on the basis of export value and that the invoice price in each instance represents said export value.

The trial court held, insofar as the offers and sales for consumption in Canada were concerned, that there was no evidence in this record of any restrictions on the use, disposition, or resale of this merchandise; that the mere fixing of the initial ceiling price did not prevent a finding of foreign value; and that the record was not clear that *all* purchasers for home consumption in Canada could not have bought at $1.30 per dozen tins.

Plaintiff's exhibit 2, an affidavit of Harry Grimson, canned food sales manager of Canada Packers, Ltd., of Toronto, Ontario, Canada, after showing his qualifications, states:

* * * that during the months of April, May and June 1945 such or similar canned pumpkin was offered for sale and sold by Canada Packers Ltd. as canners to all wholesalers in Canada, including wholesale branches of Canada Packers Ltd. in any quantities at a price of $1.05 a dozen cans, less 1½% cost [*sic*] discount, and less ¼ of 1% for leaks and swells; that this price was the ceiling price allowed by the Wartime Prices and Trade Board of Canada on sales by Canners to Wholesalers; * * * that during this same period Canada Packers Ltd. as Wholesalers offered and sold such or similar canned pumpkin to all Retailers in Canada in any quantities at a price of $1.30 a dozen cans; that such price was the ceiling price allowed by the Waretime [*sic*] Prices and Trade Board of Canada on sales by Wholesalers to Retailers; * * * that during the period stated above all canners, wholesalers and manufacturers were subject to ceiling prices as prescribed by the Wartime Prices and Trade Board of Canada; * * * that during the period in question neither Canada Packers Ltd. or any other person firm or corporation freely offered or sold, or was permitted to offer or sell such or similar canned pumpkin to all purchasers without such restrictions; * * *.

From the foregoing, it appears that Canada Packers, Ltd., offered and sold canned pumpkin as *canners* to *wholesalers* in Canada at $1.05 (Canadian currency) per dozen tins, less 1½ per centum, less one-fourth of 1 per centum for leaks and swells, and also offered and sold as *wholesalers* to *retailers* in Canada at $1.30 (Canadian currency) per dozen tins, each price being the ceiling price allowed by the

Wartime Prices and Trade Board of Canada on sales made to the respective type of purchaser. If, as stated in the affidavit (plaintiff's exhibit 2), all canners, wholesalers, and manufacturers were subject to ceiling prices as prescribed by the Wartime Prices and Trade Board of Canada, and no person, firm, or corporation in Canada offered for sale or sold or was permitted to offer or sell such or similar canned pumpkin without adhering to the foregoing ceiling prices, and the ceiling price to all retailers in Canada was $1.30 (Canadian currency) per dozen tins, then it would appear the resale prices by wholesalers reselling to retailers were governed by the restriction of the ceiling price of $1.30 (Canadian currency) per dozen tins.

The evidence quoted from the affidavit (plaintiff's exhibit 2) in regard to the Wartime Prices and Trade Board of Canada and its regulations is not challenged by this record. As a matter of fact, defendant's exhibit 3, a photostatic copy of a report of the Treasury representative acting in charge, and the only direct evidence offered by counsel for the defendant-appellee does not even report the existence of the Wartime Prices and Trade Board of Canada.

In *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262, our appellate court stated:

* * * The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its resale, use or other disposition, regardless of the source of such restraint. * * *

This governmental restriction, at the wholesale to retail level, on the resale price thereof, creates a controlled or restricted market, since the restraint affected the resale price. Therefore, there can be no finding of a foreign value for this merchandise. *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115.

I feel that the foreign market is controlled and accordingly it is not necessary to consider whether or not there was any single price at which such or similar merchandise was offered for sale to all purchasers in Canada for home consumption.

However, the record is clear that such or similar merchandise is freely offered for sale to all purchasers in the principal market of Toronto, Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States at $1 (United States currency) per dozen tins, packed.

In my opinion the record establishes the following facts:

1. The merchandise consists of canned pumpkin exported from Canada during May 1945.

2. On sales for consumption in Canada, the Wartime Prices and Trade Board of Canada specified the different ceiling prices that could be charged wholesalers and retailers, depending upon the type of purchaser.

3. No person, firm, or corporation was permitted to offer or sell such or similar merchandise for consumption in Canada without adhering to the restrictions dictated by the Wartime Prices and Trade Board of Canada.

4. During the period of exportation, such or similar merchandise was freely offered for sale to all purchasers in the principal market of Toronto, Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States at $1 (United States currency) per dozen tins, packed.

Based on the above-stated facts, the conclusions of law should be:

1. That there is no foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for the reason that the foreign market was controlled or restricted.

2. That there does exist an export value, as defined in section 402 (d) of the Tariff Act of 1930, which is the proper basis for the determination of the value of this merchandise, and that such value was $1 (United States currency) per dozen tins, packed.

The decision and judgment of the court below should therefore be reversed.