(A. R. D. 47)

UNITED STATES *v.* EMPIRE DISTRIBUTORS, SUCCESSOR TO EMPIRE WHOLESALERS

Entry No. 3500.

Second Division, Appellate Term

(Decided July 8, 1954)

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*John C. Ray* for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., concurring; FORD, J, concurring specially

RAO, Judge: This is an application for review of a decision and judgment rendered upon an appeal for reappraisement of an importation of sanitary kitchen step-on waste cans. The merchandise in question was manufactured in Canada by Engineering Products of Canada, Ltd., and exported therefrom on September 30, 1946, invoiced at $1 per can. It was entered at the port of Detroit, Mich., at a value of $1.15, less 5 per centum, less 8 per centum tax, each, and was appraised at $1.23 each, net, packed, upon the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Included in the appraised value was an item, representing an 8 per centum Canadian sales tax, which the Government, appellant herein, has since conceded is not properly a part of the foreign value of this merchandise. All of the prices and values herein and hereinafter stated are in terms of Canadian currency.

The instant appeal for reappraisement was first heard by Judge Ekwall of this court, who found the record made before him adequate to negative the existence of foreign, export, and United States values for the subject merchandise, but insufficient to establish all of the elements of cost of production, the value contended for by the importer (appellee herein) within the provisions of section 402 (f) of the Tariff Act of 1930. He, therefore, held:

Plaintiff herein has the burden not only of overcoming the presumption of correctness attaching to the appraiser's valuation but also of proving the correct dutiable value. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D.

48332. I find that the plaintiff has failed to prove the proper dutiable value of the merchandise, in which case the value found by the appraiser would govern. However, the appraised value was based upon foreign value which I have found to be inapplicable due to the fact that the market is controlled. Inasmuch as there is no export value, no United States value, and, as pointed out above, proof of cost of production is unsatisfactory insofar as the item of profit is concerned, I find that the ends of justice would best be served by restoring the case to the Detroit docket in order that the missing elements of proof may be supplied.

When the case was subsequently called for trial, our associate, Judge Mollison, presided. In view of Judge Ekwall's decision, and with a commendable desire to define and delimit the issues to be raised before him, Judge Mollison engaged in the following colloquy with counsel for the Government:

JUDGE MOLLISON: Before you start, Mr. Martoccia, is it agreed by you and for the defendant that foreign value is not applicable to this case?

MR. MARTOCCIA: There is no foreign value.

JUDGE MOLLISON: There is no foreign value. What about export value?

MR. MARTOCCIA: There is no export value.

JUDGE MOLLISON: And United States value?

MR. MARTOCCIA: There is no United States value.

JUDGE MOLLISON: So, it is agreed between the parties that the proper basis for valuation is cost of production.

MR. MARTOCCIA: Yes.

We apprehend no basis for the contention, made both before Judge Mollison, and before us, that the foregoing concession was not intended to be an abandonment of the issues raised in the first trial. It seems to us, as it did to Judge Mollison, to be a clear, unambiguous, and unequivocal statement, ruling out all of the statutory bases of value, except that of cost of production. Nevertheless, in view of appellant's insistence upon the proposition that the appraised value, less 8 per centum, represents the correct value of the merchandise, and the specific assignment of error directed toward the failure of the trial court to find a foreign value for this merchandise, we are constrained to treat the concession as having been withdrawn.

As the order restoring the case to the Detroit docket contains no final determination of the ultimate issue in this case, to wit, the value for duty purposes of the merchandise herein involved, it is an interlocutory, rather than a final order. Hence, it is not appealable. *Cox & Fahner (Steel Union-Sheet Piling, Inc.) et al.* v. *United States*, 31 C. C. P. A. (Customs) 141, C. A. D. 264. And the question of whether there is a foreign value for this importation remains an open one to be herein decided.

Foreign value is defined in section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the

United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

With respect to the question of whether such a value existed for this merchandise, the record shows that the Canadian manufacturer offered identical cans for sale for home consumption at maximum prices fixed by the Canadian Wartime Prices and Trade Board. Such prices were as follows:

| | |
|---|---|
| To jobbers and wholesalers | $1. 01 |
| To chain and department stores | $1. 15 |
| To retailers | $1. 23 |

These prices were not deviated from, except in the case of certain chain and department stores which, because of large quantity purchases, were able to buy these cans at either $1.05 or $1.15, less 5 per centum.

The Canadian Wartime Prices and Trade Board designated each of the foregoing categories of buyers but permitted the manufacturer to determine which of its customers fell within each class. The board also fixed maximum prices for the resale of such merchandise by dictating the maximum profit each of these categories of purchasers was permitted to add upon resale. Except as hereinabove outlined, no other control was exercised by said board. Minimum prices were not set, nor was there other restraint or restriction imposed upon the use or the resale of this merchandise. It does appear that the manufacturer endeavored to compel its customers to comply with the maximum prices fixed by the board, but no instance of the refusal of the manufacturer to sell a purchaser who had failed to do so is cited.

The evidence, as supplemented by that adduced at the second trial, also established that if similar merchandise were offered for sale for home consumption by other manufacturers the maximum price regulations of the Canadian Wartime Prices and Trade Board likewise applied.

Appellant contends that a foreign value did exist for this merchandise, since it was freely offered to all purchasers, without restrictions as to resale or use. It is urged that the mere fixing of maximum prices, as in the case of the setting of minimum prices, does not operate to produce a controlled market, or to preclude a finding of foreign value. It is, therefore, argued that, inasmuch as the price to retailers was the price at which any one could buy in the usual wholesale quantities, to wit, 12 units, and in the ordinary course of trade, such price, less the concededly inapplicable 8 per centum sales tax, constitutes the foreign value of the merchandise at bar.

It is indeed settled law that the fixing of an initial price at which merchandise is freely offered for sale, without restriction upon its

resale, distribution, or the buyer's right to absolute dominion over his purchase, does not create a controlled market. Whether the price be fixed by intervention of the sovereign, by action of the manufacturer, or in concert with other producers of like or similar merchandise, if the effect of the control extends no further than the initial sale or offer for sale, it does not operate to create a restricted market. *United States v. Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497; *United States v. S. S. Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39; *Mager & Gougelman, Inc. v. United States*, 13 Cust. Ct. 394, Reap. Dec. 6065; *F. W. Myers Company, Inc. (F. H. Leggett & Co.) v. United States*, 22 Cust. Ct. 368, Reap. Dec. 7646.

This, however, is not the factual situation which obtains in the case before us. The Canadian Wartime Prices and Trade Board not only dictated the maximum prices the manufacturer might receive for its merchandise, but also regulated the prices which could be charged upon resale by wholesaler to retailer, and by retailer to consumer. Thus, from manufacturer to consumer, a rigid control was exercised, and no one, presumably other than the consumer, was free to dispose of his merchandise at will.

Doubtless, a like restriction imposed by the manufacturer would operate to deprive its offerings of that element of freedom which is a statutory essential to the existence of a foreign market value. It has been so held in the case of *M. V. Jenkins et al. v. United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, wherein the court stated:

Numerous cases have been cited here by both parties in support of their contentions but in none of the cited cases is the factual situation on all fours with the facts in the case at bar. This court has pointed out and correctly held, however, "that all the authorities relating to cases in which the prices for resale were fixed by the original sellers were to the effect that a restricted market was created, and that in such cases there was no foreign value in the sense of the statute." *United States v. Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, 6, C. A. D. 115. See also *Goodyear Tire & Rubber Co. v. United States*, 11 Ct. Cust. [Appls.] 351, 354, T. D. 39158; *Meadows, Wye & Co. (Inc.) et al. v. United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324.

We see no difference in principle between a price control set in motion by the manufacturer, and one which comes into being by virtue of governmental decree. In either event, the effect of placing a limitation upon the resale price is the same, for the buyer may not offer his merchandise for sale at wholesale freely and upon his own terms.

As stated in the case of *United States v. Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, 135, C. A. D. 262:

Appellant contends that restraints imposed by the sovereign on the interchange of goods because of war or abnormal world conditions do not convert an otherwise free market into a restricted one. To read this contention is to answer it. Wher-

ever a restraint is imposed upon the use of purchased goods there can be no free market, regardless of whether such restraint has been imposed by the sovereign or a private association, cartel, or syndicate. The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its resale, use or other disposition, regardless of the source of such restraint. * * *

Moreover, it clearly appears from this record that the prices for home consumption varied, not by reason of the quantity sold, but by reason of the category of the purchaser. Appellant's brief frankly sets forth the sales structure of the Canadian market in the following statement:

Sales in wholesale quantities were made to three classes of buyers, namely, jobbers, chain and department stores, and retailers. They were made at three different prices, namely, $1.01, $1.15, and $1.23, respectively. These were the maximum prices that could be obtained from each class, under the rules and regulations of the Canadian Wartime Prices and Trade Board. * * *

Appellant has also tabulated the list of wholesale sales enumerated in plaintiff's exhibit 1 and defendant's collective exhibit 5, and has correctly concluded therefrom that the usual wholesale quantity for the sale of such merchandise was 12 cans. As we analyze the sales enumerated in the stated exhibits, it is observed that sales of 12 cans were made to all three classes of purchasers, at prices which depended exclusively upon the category of the buyer. Therefore, no one price may be selected as the price at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, and no foreign value can be found. *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, reversed on other grounds in 31 Cust. Ct. 473, A. R. D. 33; *F. W. Myers Company, Inc. (F. H. Leggett & Co.)* v. *United States*, 30 Cust. Ct. 536, Reap. Dec. 8209.

There is, as well, ample evidence in the record to sustain a finding that neither an export nor a United States value for such or similar merchandise existed. It appears that appellee is the exclusive United States representative of the Canadian manufacturer, and no other American importer is able to purchase such merchandise during the period here involved. Thus, such merchandise was not freely offered for sale to all purchasers in the principal markets of Canada for export to the United States. *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911.

Appellee's witness Heedon testified that no similar merchandise was produced in Canada. Whether the disposal cans produced by the manufacturers named in the report of the Treasury representative, defendant's collective exhibit 7, were similar, or merely of the same general character, it is not necessary here to decide for the reason that neither of said firms sold their merchandise for export to the United States.

By reason of a heavy demand in the United States markets for these waste cans, appellee was not able to keep a stock on hand. Sales were made from samples, with delivery not anticipated in less than 30 to 90 days. Shipments were made by the Canadian manufacturer against orders which had previously been taken by the importer. As stated by witness Ben Goldberg, president and general sales manager of Empire Industries, formerly Empire Wholesalers, "We were always 12 to 18 cars oversold."

It is, therefore, evident that at or about the time of exportation of the instant merchandise there was no previously imported prototype merchandise, packed ready for delivery, offered for sale in the principal markets of the United States. This is a requirement which is indispensable to the existence of United States value. *United States* v. *G. W. Sheldon & Co.* (*Renaud & Co.*), 23 C. C. P. A. (Customs) 245, T. D. 48108; *United States* v. *Collin & Gissel* (*Ludwig Baer*), 29 C. C. P. A. (Customs) 96, C. A. D. 176; *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274.

We come now to a consideration of whether appellee has offered sufficient proof to sustain a value predicated upon cost of production, and, if so, whether the value found by the trial court of $1.03 per can is the proper one.

Cost of production as a basis of value is defined in section 402 (f) of the Tariff Act of 1930 as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

As pointed out by the trial court, the parties hereto agree that there is no dispute as to the items of cost entering into paragraphs (1) and (3) of the statutory definition of cost of production. These items, therefore, concededly total Canadian $63.91 per 100 cans.

There remained for the trial court's finding the usual general expenses in the case of such or similar merchandise, and the addition for profit, as provided for in paragraphs (2) and (4), *supra*, respectively. The trial court carefully recited and analyzed the facts pertaining to each of these items, and no useful purpose would be served in here repeating the same.

Suffice it to say, we are of opinion that the apparent inconsistencies in the cost-of-production figures bearing upon usual general expenses have been satisfactorily reconciled by the evidence introduced by appellee. We, therefore, approve and adopt the rate of 134.41 per centum found for this item by the trial court for the period from January 1, 1946, to August 31, 1946, as revealed in the following calculation restated from the decision below:

| Item | Total amt. Jan. through Aug. 1946 | % not applicable to step-on cans | Amt. not applicable to step-on cans |
|---|---|---|---|
| Technical salaries | $30, 020. 48 | 100 | $30, 020. 48 |
| Automobile | 4, 392. 18 | 100 | 4, 392. 18 |
| Experimental | 5, 092. 20 | 100 | 5, 092. 20 |
| Tool repair | 16, 434. 46 | 90 | 14, 791. 02 |
| Municipal—Provincial Tax | 3, 382. 41 | 90 | 3, 044. 17 |
| Depreciation—Building | 2, 352. 10 | 90 | 2, 116. 89 |
| " —Machinery & equipment | 10, 098. 73 | 90 | 9, 088. 86 |
| " —Furniture & fixtures | 374. 00 | 90 | 336. 60 |
| " —Rolling Stock | 2, 290. 96 | 90 | 2, 061. 87 |
| Maintenance of Machinery | 56, 061. 59 | 80 | 44, 849. 67 |

Total amount of overhead not applicable to step-on cans_ $115, 793. 94

Total amount of overhead January through August 1946 [exhibit 5] ___ $485, 782. 14

Less total amount of overhead not applicable to step-on cans (above) ___ $115, 793. 94

Total amount of overhead applicable to step-on cans_____ $369, 988. 20

Cost of direct labor January through August 1946 $275, 270. 96 [exhibit 5]

Percentage of cost of overhead applicable to step-on cans to cost of direct labor=

369,988.20÷275,270.96=1.34408+=134.41 per centum.

Inasmuch as the totals for cost of materials and labor were derived from a base period which terminated on August 23, 1946, and the merchandise was not exported until September 30 of that year, the inclusion of overhead for the month of August 1946 is fully justified.

It seems to be the position of appellant that there is no competent evidence in the instant record to establish the profit ordinarily added by manufacturers of merchandise of the same general character. Urging acceptance of the figures contained in plaintiff's collective exhibit 4, for materials, labor, and the overhead of 182.82 per centum for the period from January 1, 1946, to July 31, 1946, or a total of

$104.20 per 100 cans, appellant contends that the statutory minimum profit of 8 per centum, equal to $0.08336 per can, should be added.

In the light of our conclusion that the usual general expenses amounted to 134.41 per centum of the cost of direct labor, or $29.62 per 100 cans, we doubt that appellant would wish to adhere to this contention. So to do, would, of course, reduce the value of the involved merchandise below that found by the trial court. It is for this reason that we look with leniency upon the acceptance of the evidence offered by appellant, without objection by appellee, regarding the profit ordinarily added by other manufacturers of merchandise of the same general character. This consisted of a memorandum of Treasury representative A. A. McPhetres, included in defendant's collective exhibit 7, which contains the following statements from representatives of other manufacturers of waste cans:

Mr. Corrigan said that the profit was estimated at 30 percent of the factory cost, which included sales tax; selling and administrative cost; warehouse and shipping costs, which would leave an estimated net profit of 10 percent.

\* \* \* \* \* \* \*

Mr. Vanstone said this can sold for more than $4.00 wholesale in 1946 and was under the War Prices Trade Board regulations. A profit of 10 percent was added to the factory cost to arrive at wholesale value.

Proof of this character would ordinarily be deemed inadequate because unsupported by complete cost and accounting records. *United States* v. *Philipp Wirth et al.*, 24 C. C. P. A. (Customs) 188, T. D. 48654; *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114, C. A. D. 407. However, under the circumstances of its introduction in the instant case, and in view of the fact that appellee has not been heard to complain thereof, the finding that the profit ordinarily added is 10 per centum is approved.

We affirm the conclusion of the trial judge that cost of production of one sanitary step-on waste can is $1.03, and, in doing so, adopt the findings of fact and conclusions of law embodied in the opinion rendered by him.

Judgment will be rendered accordingly.

CONCURRING OPINION

LAWRENCE, Judge: I concur with my associates in the judgment herein.

In my opinion, the concession made by the parties in open court that there was no foreign, export, or United States value should be held to be binding and conclusive, no appropriate steps having been taken to recede from it. See *United States* v. *Meadows Wye & Co., Inc. (F. A. MacCluer, Inc.)*, 15 Ct. Cust. Appls. 451, T. D. 42643.

CONCURRING SPECIALLY

FORD, Judge: I wish to express my disagreement with the following holding by my associate:

· * * * As we analyze the sales enumerated in the stated exhibits, it is observed that sales of 12 cans were made to all three classes of purchasers, at prices which depended exclusively upon the category of the buyer. Therefore, no one price may be selected as the price at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, and no foreign value can be found.

When merchandise is sold to different classes of purchasers at different prices, and the prices at which the merchandise thus sold depend exclusively upon the category of the purchaser, such sales cannot be accepted as evidence of the price at which the merchandise is freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade. This is so because such sales do not represent free offers for sale to *all* purchasers, and not because such sales are made at different prices. The fact that merchandise is freely offered for sale and sold at various prices at or about the dates of exportation does not prevent this court from finding a value for such merchandise. *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129.

Since the above holding of my associate is not necessary to a decision in this case, with the above reservation, I concur in the decision and judgment of my associate.