578

(A. R. D. 49)

UNITED STATES *v.* F. W. MYERS COMPANY, INC. (F. H.
LEGGETT & Co.)

Entry Nos. A–6372; A–6495; A–6630.

First Division, Appellate Term

(Decided November 9, 1954)

*Warren E. Burger*, Assistant Attorney General (*Guy Gilbert Ribaudo* and *Daniel I. Auster*, trial attorneys), for the appellant.

*Marlow & Hines*; *John D. Rode*, associate counsel; for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case is before us as a review of the decision in *F. W. Myers Company, Inc. (F. H. Leggett & Co.) v. United States*, 30 Cust. Ct. 536, Reap. Dec. 8209, wherein the trial judge (Ekwall, J.) held export value, as defined in section 402 (d) of the Tariff Act of 1930, to be the proper basis for appraisement of three shipments of canned pumpkin exported from Canada during the month of May 1945 by Canada Packers, Ltd. Each shipment was invoiced at $1 (United States currency) per dozen tins, entered at

$1.05 (Canadian currency) per dozen tins, plus 8 per centum Canadian sales tax, and appraised on the basis of foreign value at $1.30 (Canadian currency) per dozen tins, less 2½ per centum cash discount, less one-fourth of 1 per centum discount for leaks and swells, plus 8 per centum Canadian sales tax.

The case has been the subject of considerable previous litigation, as set forth in detail in the decision of the trial judge, Reap. Dec. 8209, *supra*.

The primary question for consideration is whether the foreign market was a controlled market. Determination thereof depends on whether a price schedule, setting forth ceiling prices under different categories of purchasers, established by the Wartime Prices and Trade Board of Canada, imposed restrictions which, under prevailing judicial authorities, created a controlled foreign market.

A controlled foreign market exists where sales for home consumption are conditional upon the use, resale, or disposition of the merchandise. *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115. In the *Half Moon Mfg. & Trading Co., Inc.*, case, *supra*, it was held that a controlled foreign market exists where "prices for resale were fixed by the original sellers," and that "in such cases there was no foreign value in the sense of the statute." The *Graham & Zenger, Inc.*, case, *supra*, emphasized the principle as follows:

Appellant contends that restraints imposed by the sovereign on the interchange of goods because of war or abnormal world conditions do not convert an otherwise free market into a restricted one. To read this contention is to answer it. Wherever a restraint is imposed upon the use of purchased goods there can be no free market, regardless of whether such restraint has been imposed by the sovereign or a private association, cartel, or syndicate. The very essence of freedom is taken from a sale of goods accompanied *by any restraint with respect to its resale, use or other disposition, regardless of the source of such restraint.* * * * [Italics supplied.]

With the cited authorities in mind, we turn to the pertinent phase of the evidence which was offered by appellee in an affidavit executed by the canned food sales manager of the Canadian exporter of the shipments under consideration. The affiant, after showing his qualifications, states:

* * * that during the months of April, May and June 1945 such or similar canned pumpkin was offered for sale and sold by Canada Packers Ltd. as canners to all wholesalers in Canada, including wholesale branches of Canada Packers Ltd. in any quantities at a price of $1.05 a dozen cans, less 1½% cost [*sic*] discount, and less ¼ of 1% for leaks and swells; that this price was the ceiling price allowed by the Wartime Prices and Trade Board of Canada on sales by Canners to Wholesalers; * * * that during this same period Canada Packers Ltd. as Wholesalers offered and sold such or similar canned pumpkin to all Retailers in Canada in any quantities at a price of $1.30 a dozen cans; that such price was the ceiling price

allowed by the Waretime [*sic*] Prices and Trade Board of Canada on sales by Wholesalers to Retailers; * * * that during the period stated above all canners, wholesalers and manufacturers were subject to ceiling prices as prescribed by the Wartime Prices and Trade Board of Canada; * * * that during the period in question neither Canada Packers Ltd. or any other person firm or corporation freely offered or sold, or was permitted to offer or sell such or similar canned pumpkin to all purchasers without such restrictions; * * *.

The controlling influence of the above quoted testimony lies in the uncontradicted statements that "all canners, wholesalers and manufacturers were subject to ceiling prices as prescribed by the Wartime Prices and Trade Board of Canada"; and that "neither Canada Packers Ltd. or any other person firm or corporation freely offered or sold, or was permitted to offer or sell such or similar canned pumpkin to all purchasers without such restrictions." The effect of such trade practice and procedure was a positive restraint over the resale price which condition, under the cited authorities, created a controlled foreign market.

While such a condition is sufficient, of itself, to eliminate statutory foreign value, we deem it proper to carry discussion of the issue further, in line with the decision of the trial judge, finding an additional reason for removing foreign value as the basis for appraisement of the merchandise under consideration. In this connection, reference is made to a stipulation entered into between counsel for the respective parties wherein it is agreed that "the prices of $1.05 per dozen tins, plus 8 per cent sales tax to wholesalers, and $1.30 per dozen tins, including 8 per cent sales tax to retailers, were maximum prices fixed by the Wartime Price and Trade Board and these maximum prices were not fixed by or controlled by Canada Packers Limited."

The trial judge stated, "In view of this stipulation," that—

* * * It is evident, therefore, that all purchasers could not buy at $1.30 per dozen cans, since the maximum price to wholesalers was fixed at $1.05 per dozen cans. On the other hand, the price to retailers was fixed at $1.30 per dozen cans, and there is no evidence of offers or sales to them at any other price. There is nothing to indicate that the prices fixed by the Board depended in any way upon the quantity purchased.

and then held as follows:

* * * However, it is now clear that the Board fixed two different prices for the same merchandise, depending upon the class of purchaser and not the quantity purchased. There was no price at which all purchasers could buy. In such a situation, no foreign value can be found in accordance with the provisions of the statute that the foreign value shall be the price at which the merchandise "is freely offered for sale for home consumption to all purchasers." (Section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.) A single price at which the merchandise is freely offered to all purchasers must be established in order to find the statutory dutiable value. *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129.

Pertinent to the foregoing conclusion, with which we are in full accord, the trial judge very appropriately cited the case of *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, and quoted therefrom as follows:

But there is nothing in the statute as written which would support the selection of one value and the discarding of all others where merchandise is offered for sale at a series of prices depending, not upon the quantity purchased, but upon the category of the purchaser. When the question of usual wholesale quantities is not a factor, as in the case at bar, the statute does not have left therein a word which would suggest selection of one price out of several prices, as does the word "usual" in "usual wholesale quantities." Contrariwise, the statute specifically calls for that price at which the merchandise is offered to "all" purchasers.

In truth and in fact, such a price did not exist under the facts in the case at bar. The price at which the merchandise was offered for sale to retailers was no more the price at which it was offered for sale to "all" purchasers than was the price to wholesalers or the price to chain and department stores. * * *

The above quotation from the *Glanson* case, *supra*, is explanatory of the situation now before us. Here, as there, the merchandise was not offered at any single price to "all" purchasers. Therefore, there can be no foreign value, as such value is contemplated by the statute (section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938).

The reasoning followed and the conclusions reached, as to each of the propositions discussed herein, are completely supported by the recent decision in the case of *United States* v. *Empire Distributors, Successor to Empire Wholesalers*, 33 Cust. Ct. 568, A. R. D. 47 (not appealed). That case involved kitchen step-on cans exported from Canada in September 1946. The record therein showed that Canadian manufacturers of such and similar merchandise offered the products for sale for home consumption at various maximum prices fixed by the Canadian Wartime Prices and Trade Board, dependent on different categories of purchasers. The Board also established maximum prices for the resale of such merchandise by dictating the maximum profit each of the categories of purchasers was permitted to add upon resale. "Thus, from manufacturer to consumer, a rigid control was exercised, and no one, presumably other than the consumer, was free to dispose of his merchandise at will." The record in the said case showed further that "the prices for home consumption varied, not by reason of the quantity sold, but by reason of the category of the purchaser." Based upon such a factual situation which, it will be observed, is substantially the same as that which is before us in the present case, the court held, citing with approval all of the cases hereinabove referred to, that "no foreign value can be found." The same conclusion applies in this case.

The evidence adduced herein by both parties, with respect to export value (section 402 (d) of the Tariff Act of 1930), establishes that

canned pumpkin, such as or similar to the merchandise in question, was, at the time of exportation of the present merchandise, freely offered for sale and sold to all purchasers in the principal market of Toronto, Canada, for exportation to the United States in not less than carload quantities, at the price of $1 (United States currency) per dozen cans, including the cost of containers and packing.

On the basis of the present record, and for all of the reasons herein-above set forth, we find as facts:

(1) That the imported merchandise consists of canned pumpkin exported from Canada during May 1945.

(2) That said merchandise was invoiced at $1 (United States currency) per dozen cans, entered at $1.05 (Canadian currency) per dozen cans, plus 8 per centum Canadian sales tax, and appraised on the basis of foreign value at $1.30 (Canadian currency) per dozen cans, less 2½ per centum cash discount, less one-fourth of 1 per centum for leaks and swells, plus 8 per centum Canadian sales tax.

(3) That at the dates of exportation herein said merchandise was offered and sold for home consumption in Canada at a maximum price of $1.05 per dozen cans, plus tax, to wholesalers, and at a maximum price of $1.30 per dozen cans, including tax, to retailers; that said prices were fixed by the Wartime Prices and Trade Board of Canada and did not depend upon the quantity purchased.

(4) That there was no one price at which such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of Canada in the usual wholesale quantities and in the ordinary course of trade.

(5) That at the date of exportation herein such or similar merchandise was freely offered for sale to all purchasers in the principal market of Toronto, Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at $1 (United States currency) per dozen cans, packed.

Accordingly, we conclude as matters of law:

(1) That there is no foreign value for the imported merchandise, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

(2) That the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise in question.

(3) That such statutory export value is $1 (United States currency) per dozen cans, packed.

The judgment of the trial court is affirmed. Judgment will be entered accordingly.