(Reap. Dec. 8403)

PISTORINO & CO., INC. *v.* UNITED STATES

Entry No. 2157.

(Decided March 11, 1955)

*Joseph F. Lockett* (*Walter E. Doherty, Jr.*, of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Samuel D. Spector*, trial attorneys), for the defendant.

LAWRENCE, Judge: Certain fishing reels were shipped by the Lawson Machine Works of Montreal, P. Q., Canada, and entered at the port of Boston, Mass., for the account of H. A. Whittemore & Co., Inc.

The merchandise was invoiced at $3.50, United States currency, per reel, and entered at the equivalent price of $3.90, Canadian currency, plus 8 per centum sales tax.

It was appraised at $7.95, Canadian currency, less 35 per centum, packed, on the statutory basis of foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

Plaintiff contends that foreign value was improperly adopted by the appraiser, alleging that, due to certain restrictions in the Canadian market, foreign value in a legal sense did not exist. Consequently, it is claimed by the plaintiff that the merchandise should be appraised on the basis, first, of export value, as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), or, in the alternative,

on the basis of the United States value, section 402 (e) of said act, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (e)).

Implicit in the appraiser's return of foreign value herein is the finding that it was equal to or higher than the export value, if any. See section 402 (a) (1) of said act (19 U. S. C. § 1402 (a) (1)). The finding of value by the appraiser is presumptively correct until overcome by sufficient competent proof (section 501 of said act (19 U. S. C. § 1501) (now 28 U. S. C. § 2633)).

In the circumstances, if it appears from the record before me that the appraiser correctly found a foreign value for the merchandise, it will be unnecessary to consider the alternative claims of plaintiff.

At the trial of this case, in addition to the testimony of one witness who appeared on behalf of plaintiff, there were received in evidence the following exhibits:

Plaintiff's exhibits 1 and 2—affidavit of H. Lawson, president of the Lawson Machine Works, exporter of the involved merchandise, and two documents of the Canadian Wartime Prices and Trade Board entitled "Price Fixation."

Defendant's exhibits 3, 4, and 5—reports of E. J. Allen, customs agent in Montreal, Canada, approved by Treasury Attaché M. C. Northup, together with accompanying papers.

It was orally stipulated by counsel that the prices fixed by the Wartime Prices and Trade Board of Canada applied only to merchandise sold within the Dominion of Canada and did not apply to sales for export.

Reduced to its simplest terms, the first consideration in this case resolves itself into the question whether the action of the Wartime Prices and Trade Board of Canada in fixing the maximum prices and terms of sale at which wholesalers might sell such or similar goods for home consumption in Canada and which impose similar terms on sales by retailers created a "controlled market" and precluded the application of statutory foreign value to the merchandise in controversy.

Both parties cite the cases of *United States* v. *R. H. Macy & Co.*, 20 Cust. Ct. 395, Reap. Dec. 7561, and *F. W. Myers Company, Inc. (F. H. Leggett & Co.)* v. *United States*, 22 Cust. Ct. 368, Reap. Dec. 7646. Said *Myers* case subsequently became the subject of an appeal to an appellate division of this court and, after a necessarily extended course of litigation, was determined finally in the recent decision of *United States* v. *F. W. Myers Company, Inc. (F. H. Leggett & Co.)*, 33 Cust. Ct. 578, A. R. D. 49.

In view of the reliance placed by the parties hereto on the *Myers* case, *supra*, it was deemed advisable, in the interest of justice, to hold in abeyance determination of the present case, pending the final

decision in the *Myers* controversy. It was there held by the first division of this court that the establishment of ceiling prices by the Wartime Prices and Trade Board for different categories of purchasers, the price restriction extending to the resale of the merchandise, created a controlled foreign market and prevented a finding of foreign value, as defined in section 402 (c) of the Tariff Act of 1930, amended by the Customs Administrative Act of 1938, as a proper basis for the appraisement of merchandise subject thereto.

The prices at which the fishing reels in issue were sold for home consumption in Canada were governed by the restrictions of the Canadian Wartime Prices and Trade Board. That fact, in the light of the *Myers* case, *supra*, prevents a finding of statutory foreign value for the merchandise.

Attention is now directed to a determination of whether or not there existed an export value, within the meaning of section 402 (d), *supra*, the provisions of which read as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In support of the contention that there existed such an export value, plaintiff herein relies upon the affidavit of H. Lawson, president of the Lawson Machine Works, exporter of the involved merchandise, in evidence as exhibit 1. It there appears that, for a 6-month period surrounding the date of exportation of the instant merchandise, the Lawson Machine Works manufactured, offered for sale, and sold Laurentian fly reels, casting reels, and other types of fishing tackle to all purchasers for export to the United States. The affiant, Lawson, was familiar with the market conditions, prices, quantities, names of purchasers, and terms of sale on all sales made by said Lawson Machine Works, during the period referred to, not only to purchasers for exportation to the United States but as well to those in the principal markets of Canada. He stated, further, that Montreal was the principal market in Canada where such articles were sold and offered for sale by the said Lawson Machine Works and that the prices were the same whether 100 or more reels were ordered. Affiant averred that, during said 6-month period, Laurentian fly reels, such as or similar to those here involved, were sold by his company to H. A. Whittemore & Co., Inc., of Boston, Mass., for exportation to the United States, at the price of $7.95, less 35 per centum, less 25 per centum, Canadian currency, or $3.50, United States currency.

The affidavit contains the further statement that, during the 6-month period referred to, the said Lawson Machine Works sold identical Laurentian fly reels to the following persons and firms, among others: Ray Wurth, Milwaukee, Wis.; Don Morrill Co., Fresno, Calif.; R. H. Macy Co., New York, N. Y.; Kelley-How-Thomson Co., Duluth, Minn.; and Edward K. Tryon Co., Philadelphia, Pa., for exportation to the United States at the same prices and terms of sale as sold to said H. A. Whittemore & Co., Inc., of Boston, in whatever quantities the purchasers ordered, whether 100 reels or more.

Defendant in its brief endeavors to controvert the existence of an export value on the ground that "the merchandise was *not* freely offered for sale to all purchasers for *export* to the United States but was restricted and limited to certain agents or distributors who had exclusive territorial jurisdiction in the area allotted to them," [italics quoted] and, in support of said allegation, makes reference to page 2 of defendant's exhibit 5, which is part of the report of E. J. Allen, customs agent in Montreal, Canada, approved by Treasury Attaché M. C. Northup. The following appears therein:

* * * Mr. Lawson again stated that he will only sell to jobbers in the United States through his agent in the district where the customer is located. Mr. Lawson stated that at the time he was first interviewed by the writer, H. A. Whittemore Inc. was his agent for the New England States but since then has been given the agency for New York State also. Mr. Lawson stated that if an order is received direct from a prospective customer in the United States, the order is referred to the agent in the district in which the customer is located; that if the agent notifies him the customer would be a good account, the order is either filled by the agent from his stock in the United States, or on his order shipped direct by the Lawson Machine Works and the agent is allowed a 10% commission on the order.

The contention of defendant that the sale for export to the United States of such or similar merchandise "was restricted and limited to certain agents or distributors who had exclusive territorial jurisdiction in the area allotted to them" is controverted not only by the affidavit of Lawson, referred to, *supra*, which contains the statement that such merchandise was offered for sale and sold to all purchasers for export to the United States at the same prices and terms of sale as were applicable in the instant case, in quantities of 100 Laurentian fly reels or more, but also by the testimony of Hollis W. Whittemore, president and treasurer of H. A. Whittemore & Co., Inc., the ultimate consignee herein, who appeared and testified on behalf of the plaintiff. In the course of cross-examination of Whittemore by Government counsel, the following testimony was brought forth:

X Q. When this merchandise you purchased in 1945, at that time did you have a territory in which you alone could sell this merchandise?—A. When I made my arrangement with Mr. Lawson, I restricted my own territory.

X Q. You had a restricted territory in which you could sell the Lawson product in the United States?—A. No, sir.

X Q. Could any other importer come into your territory and sell this merchandise?—A. Yes, sir.

X Q. Did they have to give you part of the profit?—A. No, sir.

X Q. Are you sure you didn't have any restricted territory in Boston?—A. None from Lawson whatsoever.

X Q. Who did you have it from?—A. My own company's policy which I explained to Mr. Lawson was that merchandise which we did not ourselves manufacture, we would sell throughout the New England states.

X Q. Did Lawson sell to anybody in your territory except you?—A. Yes.

X Q. Do you know of him selling anybody in your territory?—A. Yes, sir.

While Whittemore, on cross-examination, also stated that this type of merchandise was sold only to jobbers in the United States, his testimony apparently related to a different period of time from that referred to in the unqualified statement of Lawson, the actual seller for export, that he offered for sale and sold such merchandise to all purchasers for exportation to the United States.

Whatever references are contained in the customs agent's reports in evidence as defendant's exhibits 3, 4, and 5, as to the sale of such or similar merchandise to restricted territorial agencies in the United States, do not appear to be related in time to the date of the present importation or immediately prior thereto. Said reports are dated from 5 to 9 months subsequent to such period. The court, in its finding of value in the instant case, is not concerned with territorial agencies which may or may not have been created subsequently. The sworn affidavit of the exporter of the merchandise and the oral testimony under oath of the importer that there was a free offer for sale, and sales, of such merchandise on the date of exportation of the instant shipment are worthy of great weight and, with all other requisites being present, lead to the conclusion that there existed a statutory export value for Laurentian fly reels from Canada.

I am satisfied from the forthright and positive statements of Lawson with respect to his transactions for export to the United States at and prior to the period of exportation that Laurentian fishing reels were freely offered for sale and sold to all purchasers in the usual wholesale quantities at $3.50, United States currency, packed, f. o. b. Montreal, Canada, per reel.

Upon the record, the court makes the following findings of fact:

(1) That, at the time of exportation of the Laurentian fly reels in issue, the regulations of the Wartime Prices and Trade Board of Canada created a controlled foreign market, which prevents a finding of foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

(2) That, based upon the unqualified factual statements of Lawson, the actual seller for export, at the time of exportation, such merchandise was freely offered for sale and sold to all purchasers for exportation to the United States.

(3) That the principal market of the country from which exported was Montreal, Canada.

(4) That the usual wholesale quantity in which such Laurentian fishing reels were exported, in the ordinary course of trade to the United States, was 100 reels or more.

(5) That the price at which such merchandise was freely offered for sale and sold to all purchasers for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade, was $7.95 per reel, less 35 per centum, less 25 per centum, or $3.90, Canadian currency, packed, and that such price was equivalent to $3.50, United States currency, packed.

Accordingly, I hold as matter of law—

(1) That there did not exist a foreign value for such or similar merchandise, as defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*.

(2) That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the Laurentian fishing reels involved herein.

(3) That such value is $3.50, United States currency, packed, f. o. b. Montreal, Canada, per reel.

Judgment will be entered accordingly.