(Reap. Dec. 8182)

GLANSON CO. v. UNITED STATES

Entry No. 792815.

(Decided December 4, 1952)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, special attorneys), for the defendant.

MOLLISON, Judge: There is no real dispute as to the ultimate facts in this case; the dispute is as to the consequences which flow

therefrom as matter of law. The merchandise involved consists of two styles or sizes of cribbage boards, both being patented articles, exported from Canada on or .about June 14, 1948. The involved boards are designated as #28 and #29 on the invoice and were so referred to throughout the trial.

The details of the invoiced and entered values, the appraised values, and the values which the plaintiff claims are the correct values are as follows:

| No. | Invoiced and entered per dozen | Appraised per dozen | Claimed per dozen |
|---|---|---|---|
| 28 | $4. 95 | $7. 40 | $5. 55 |
| 29 | 8. 25 | 14. 40 | 11. 10 |

[Note—All prices or values referred to herein are in Canadian currency.]

It is conceded by the defendant that the appraisement was made on the basis of foreign value, which is defined in section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), as amended, and both parties here contend for values on that basis, the difference between them being as to the amount. The parties are in evident agreement that because the plaintiff had the exclusive United States right to purchase the cribbage boards manufactured by the exporter, no export value, as defined in section 402 (d) of the tariff act, *supra*, existed for such merchandise, and that because the cribbage boards in issue were patented articles, there was neither a foreign nor an export value for cribbage boards "similar" thereto within the meaning of that term as used in the statutes. The proof adduced before the court by both parties was addressed to the foreign value of "such" merchandise as defined in section 402 (c), *supra*.[1]

It clearly appears that the manufacturer and exporter of the cribbage boards in issue offered the same for sale in Canada at the time of exportation herein at three different price levels, depending upon the category of the purchaser. These prices were as follows:

| No. | To jobbers and wholesalers | To chain and department stores | To retailers, other than chain and department stores |
|---|---|---|---|
| 28 | $5.55 per doz. | $6.66 per doz. | $7.40 per doz. |
| 29 | 11.10 " " | 13.30 " " | 14.40 " " |

It also clearly appears that the above prices did not vary by reason of the quantity purchased and that there was no restriction upon use or resale or dominion over the merchandise so offered or sold.

---

[1] SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [As amended by the Customs Administrative Act of 1938.]

The primary effort of the manufacturer and exporter of the cribbage boards in issue in the sale thereof for home consumption in Canada was to sell to wholesalers. This is demonstrated by the fact that its price lists were sent to all wholesalers, but not to all chain and department stores, and not at all to retailers. Further, its advertising referred prospective purchasers to the local jobbers, or wholesalers, or, alternatively, to the manufacturer. Its salesmen called on all wholesalers, some chain and department stores, and relatively few retailers.

The result of this effort is reflected in the actual sales made by the manufacturer during the 6-month period from March 1, 1948, to and including August 31, 1948, being a period including approximately 3 months prior to the exportation of the shipment here in question, and approximately 3 months after the said shipment. A tabulation of these sales, contained in plaintiff's collective exhibit 2, being the affidavit of R. E. Pribble, the vice president and manager of the manufacturer and exporter, shows that, in both numbers of sales and quantity of the cribbage boards sold, sales to wholesalers exceeded sales to both chain and department stores and retailers combined.

It is clear from the evidence offered, however, that no sale or offer to purchase was ever refused by the manufacturer, and that any order for any quantity would be filled, the price charged depending strictly upon the category of the purchaser.

It is the contention of the plaintiff that these circumstances establish that the "ordinary course of trade" in the sale and offer for sale for home consumption in Canada of cribbage boards such as those here involved at the time of exportation was represented by the offers and sales made to jobbers and wholesalers, and that the price at which such offers and sales were made is the foreign value of the imported merchandise within the meaning of the statute.

It would be difficult to ascribe to the term "in the ordinary course of trade" a meaning which, under the facts of the case at bar, would support this contention of the plaintiff. Even if "the ordinary course of trade" be assumed to have reference to the manner in which the manufacturer and exporter here involved did business, it does not appear that offers and sales to chain and department stores and to retailers were outside the ordinary course of trade. On the contrary, the facts establish that it was the ordinary course of trade to sell to all who cared to buy the merchandise, at prices depending strictly upon the category of the purchaser. It is true that the manufacturer obviously sought to obtain distribution of its products through wholesale trade channels primarily, but there is nothing to indicate that this was done to the exclusion or even the discouragement of other trade channels. On the contrary, the record shows that not inconsiderable

efforts were made by the manufacturer to offer the merchandise to, and invite the trade of, chain and department stores and retailers, both by advertisements and by the use of salesmen, and that responses from these classes of trade were handled directly by the manufacturer, none being refused.

It is the contention of the defendant, made in the brief filed in its behalf, that "*all* sales to *all* classes are in the ordinary course of trade and the prices to each class was a freely offered price for that particular class" [italics quoted]. Defendant points out that only wholesalers could buy at the wholesale prices and that only chain and department stores could buy at the price for that class. As to the price at which the merchandise was offered to retailers, defendant says:

> \* \* \* *all* purchasers could buy at the price to retailers, and that includes the wholesaler and the chain and department stores. [Italics quoted.]

and contends that the price level to retailers represents the statutory foreign value.

It is indeed naive and unrealistic to say that wholesalers or chain and department stores *could* purchase the merchandise at the price to retailers. The fact is that it was not offered to wholesalers and chain and department stores at the price at which it was offered to retailers. The statute does not make the price a purchaser *could* pay the test of value; it is concerned with the price at which merchandise is *offered for sale*.

It is at once apparent that in this case we are confronted with a situation wherein merchandise was freely offered for sale in the foreign market at a series of prices depending solely upon the category of the purchaser. The record evidence establishes that there was no single price at which the merchandise in issue was offered for sale to "all" purchasers, meaning thereby "all of those who cared to buy such goods in such markets" (*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308). The evidence also establishes that "all of those who cared to buy such goods in such markets" were the three classes of purchasers, the wholesalers, the chain and department stores, and the retailers. Collectively, these represented "all" purchasers. If there were other classes of purchasers, the record does not show it.

The problem resolves itself into a question of whether a sound and just basis can be found within the framework of the statute as written for selecting one of the three prices at which items of merchandise such as those here involved were offered for sale in the foreign market as representative of the foreign value thereof under the provisions of the statute.

It cannot be denied that it is a very common method of doing business the world over to offer merchandise for sale at a series of prices depending upon some factor involved in connection with the sale, e. g., the quantity purchased, or the category of the purchaser. In cases where it appears that merchandise is offered for sale at a series of prices depending upon the quantity purchased, there may be some justification in selecting the price at which one quantity is offered for sale as representing the statutory value, and discarding all other prices, for the statute, as it has been construed and its language interpreted down through the years, calls for the price at which the "usual" wholesale quantity is freely offered for sale, etc.

But there is nothing in the statute as written which would support the selection of one value and the discarding of all others where merchandise is offered for sale at a series of prices depending, not upon the quantity purchased, but upon the category of the purchaser. When the question of usual wholesale quantities is not a factor, as in the case at bar, the statute does not have left therein a word which would suggest selection of one price out of several prices, as does the word "usual" in "usual wholesale quantities." Contrariwise, the statute specifically calls for that price at which the merchandise is offered to "all" purchasers.

In truth and in fact, such a price did not exist under the facts in the case at bar. The price at which the merchandise was offered for sale to retailers was no more the price at which it was offered for sale to "all" purchasers than was the price to wholesalers or the price to chain and department stores. From each class of purchasers the other classes were excluded, and this is as true of the retailers class as of the wholesalers and chain and department store classes.

This being the case, the writer is of the opinion, and finds as matter of fact that at the time of exportation of the merchandise here involved there existed no—

\* \* \* price \* \* \* at which such \* \* \* merchandise [was] freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade \* \* \* .

and consequently holds as matter of law that no foreign value for merchandise such as that here involved existed within the meaning of the statute. As the parties have confined their proof to that issue, and the appraisement having been shown to have been made on that basis, and there being nothing in the record which would support a finding upon any other basis of value, on the record as made, I have no other course than to dismiss the appeal for lack of proof.

Judgment will issue accordingly.