(Reap. Dec. 8385)

ARIS GLOVES, INC. *v.* UNITED STATES

Entry No. International Airport 848.

(Order dated January 24, 1955)

*Mary Rehan* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

ORDER

MOLLISON, Judge: This case was originally submitted for decision upon a record which consisted of certain statements made by counsel for the parties and an oral stipulation of fact. Upon due deliberation of the said record, certain seeming inconsistencies appearing, the writer ordered the case restored to the calendar in order that the fact situation might be clarified. In order to avoid repeating matter already set forth, reference is made to the order of restoration to the

calendar, reported in *Aris Gloves, Inc.* v. *United States*, 32 Cust. Ct. 545, Reap. Dec. 8275, which is hereby incorporated by such reference, as though here fully set out.

As the result of the record made upon the restoration to the calendar, the following facts appear to be clearly established:

The manufacturer, seller, and exporter of the gloves in question, Luick & Pirmann, of Esslingen, Germany, did not, as a matter of general policy, offer its product to wholesalers at lower prices than to retailers. With respect to offers for sale and sales of gloves, such as or similar to those here in issue, it appears that the reichsmark prices actually received by Luick & Pirmann were the same for all shipments to American importers, regardless of whether the purchaser was a wholesaler or retailer. However, the contracts for such sales were in dollar prices which were fixed by the Joint Export-Import Agency without consultation with the seller and, in each case, that agency assigned a rate of exchange for the conversion of the dollar price which would give Luick & Pirmann its fixed reichsmark sales price. For example, the rate of exchange assigned to the transaction under the contract here involved was 1 mark=$0.18, whereas the rate of exchange under contracts on sales to retailers at the same time was 1 mark=$0.24.

The record is not clear as to just what happened if there was an excess or a deficit between the dollar price paid by the American importer and the fixed German reichsmark price to be received by the German exporter. It appears from defendant's Exhibit A, a consular report with respect to the matter, that the Joint Export-Import Agency was empowered to manipulate the rate of exchange of reichsmarks and dollars, and, presumably, was able to average the rates assigned to each transaction so as to come out even. However, speculation as to that element of the transactions involved does not appear to be important to a decision in the matter.

From the standpoint of the manufacturer, seller, and exporter, Luick & Pirmann, the offer of merchandise, such as that at bar, was a free offer to all purchasers at a fixed price *in German reichsmarks* which did not vary because of quantities purchased or the category of the purchaser. However, the manufacturer, seller, and exporter was not free to offer the merchandise without the dictation or control of the Joint Export-Import Agency, that is to say, the merchandise could be, and actually was, freely offered for sale by Luick & Pirmann *only in accordance with the requirements of the Joint Export-Import Agency.* Those requirements dictated, and the offer actually took the form of, an offer *in United States dollars* at one price to purchasers in the category of wholesalers and jobbers, and a different price to all purchasers in any other class, including retailers. I, therefore, find that the price at which merchandise, such as or similar to that here

in issue, was offered for sale was determined solely by the category of the purchaser.

A situation in all material respects similar arose in the case of *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, except that foreign value, rather than export value, was there involved. In disposing of the issue in that case, the writer said:

* * * the statute specifically calls for that price at which the merchandise is offered to "all" purchasers.

In truth and in fact, such a price did not exist under the facts in the case at bar. The price at which the merchandise was offered for sale to retailers was no more the price at which it was offered for sale to "all" purchasers than was the price to wholesalers or the price to chain and department stores. From each class of purchasers the other classes were excluded, and this is as true of the retailers class as of the wholesalers and chain and department store classes.

This being the case, the writer is of the opinion, and finds as matter of fact that at the time of exportation of the merchandise here involved there existed no—

* * * price * * * at which such * * * merchandise [was] freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade * * *.

and consequently holds as matter of law that no foreign value for merchandise such as that here involved existed within the meaning of the statute. * * *

So in the case at bar. There was no single price at which the merchandise was offered to "all" purchasers—meaning all who cared to buy—for exportation to the United States, and, following the same reasoning, there was, therefore, no export value within the meaning of the statute for *such* merchandise *when sold at the manufacturer's level*.

The *Glanson Co.* decision, *supra*, was appealed, and, on such appeal, it was held that even though foreign value could not be found from the evidence of record which was concerned with offers of sale at the manufacturer's level, there was not sufficient evidence upon which to base a finding that no foreign value at all existed. It was pointed out that the evidence showed that the wholesale trade constituted one of the categories of purchasers to whom the manufacturer sold, and it was suggested that it was possible that the wholesale trade offered such merchandise for sale under conditions which might satisfy the statutory requirements. The judgment was, therefore, reversed and the case remanded to the trial court "to the end that a value be found for each style of the imported cribbage boards." *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A. R. D. 33.

There is no evidence before me indicating that merchandise, such as that here involved, was offered for sale in the foreign market for exportation to the United States at any other level than the manufacturer's level. There is no evidence before me with respect to offers

for sale in the foreign market for exportation to the United States of *similar* merchandise. Under the principles of the remand decision in the *Glanson Co.* case, I do not have sufficient evidence before me to determine that no export value for such or similar merchandise existed. Moreover, if no export value existed (and it has been stipulated that no foreign value existed), I do not have any evidence before me upon which I could make a finding of value on any other basis.

Upon the reasoning contained in the remand decision in the *Glanson Co.* case, therefore, I order the case restored to the calendar once again for the purpose of having the parties submit evidence upon which a value may be found for the gloves in question within the framework of the valuation statute.