| | Article | Cost of production per carton— Netherland guilder |
|---|---|---|
| Milk bars | cartons containing 576 bars | 95. 31 |
| Milk bars | " " 600 " | 95. 74 |
| Bittersweet bars | " " 576 " | 90. 26 |
| Bittersweet bars | " " 600 " | 90. 48 |
| Coffeemilk bars | " " 576 " | 96. 08 |
| Coffeemilk bars | " " 600 " | 96. 54 |
| Milkhazelnut bars | " " 576 " | 94. 40 |
| Milkhazelnut bars | " " 600 " | 95. 03 |
| Milk orange bars | " " 576 " | 95. 89 |
| Milk orange bars | " " 600 " | 96. 33 |
| Milk tablets—4 oz | | 94. 45 |
| Milk pastilles—4 oz | | 91. 64 |
| Milk pastilles—8 oz | | 75. 86 |

(Reap. Dec. 8707)

AMERICAN EXPRESS CO. *v.* UNITED STATES

Entry No. 739086.

(Order dated December 4, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

ORDER

Rao, Judge: This is an appeal for reappraisement of an importation of matrix board, in sheets of 16 or 20 by 24 inches, of a thickness of either 0.65 or 0.80 millimeter. This merchandise was invoiced at 24 cents per square meter, less a discount of 15 per centum, less 2 per centum for advance payment. It was entered at reichsmark 0.60 per square meter, net packed, and was appraised at 0.80 reichsmark per square meter, less 3 per centum, packed. Although the official papers do not specifically so indicate, it may be presumed that the appraisement was predicated upon the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930. Section 402 (c) of said act, in effect at the time of this importation, read as follows:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff's fundamental position in this action is that there was no foreign value for such or similar merchandise and that export value, as defined in section 402 (d) of said tariff act and as represented by the

entered values, should properly have been returned for this importation. Said section 402 (d) provides as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It appears from this record that the subject merchandise is similar in all material respects to that involved in the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and a portion of the evidence in the decided case has been incorporated into the instant record. It consists of a sample piece of matrix board; the testimony of Everett L. Brooks, president of Brooks Paper Co., the ultimate consignee herein, now deceased, and plaintiff's collective exhibits 2 and 3, introduced in connection therewith, being written offers for sale of matrix board from other manufacturers of that product; and a report of Treasury Representative Charles Kruszewski, dated January 21, 1935, together with attached exhibits A and B, which was defendant's collective exhibit A in the decided case. In the action before me, said attachments are in evidence as plaintiff's collective exhibit 4, the report itself having been made part of the record by stipulation of the parties.

In the case of *Brooks Paper Company* v. *United States, supra,* it was contended that the correct value of the matrix board there involved was 60 pfennigs [0.60 reichsmark] per square meter and that such value represented both foreign and export values, as defined by statute. The court had before it, in considering that contention, in addition to the evidence hereinabove itemized, an affidavit of one of the directors of the German company which manufactured and exported the involved matrix board.

At the outset of its decision, our appellate court set forth the following basic principles:

By statutory provision Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.,* 24 C. C. P. A. (Customs) 1, T. D. 48264, citing *United States*

v. *T. D. Downing Co. (George H. Sweetnam, Inc.)*, 20 C. C. P. A. (Customs) 251, T. D. 46057. It is clear, from a reading of section 402 (c) and (d), *supra*, that in order to prove foreign value or export value as a basis for a valid reappraisement, *the appellant must establish, inter alia, the usual wholesale quantities* in which such or similar merchandise involved was freely offered for sale to all purchasers in the principal markets of the country from which exported, etc. This court has so construed the statute in the case of *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, wherein we held that failure to satisfactorily establish the usual wholesale quantities constitutes a failure to establish one of the essential elements of a valid reappraisement. If appellant has failed to establish the usual wholesale quantities, then, in accordance with the foregoing, it seems clear that he has failed to meet his burden of proof, and the valuation set by the appraiser must stand. For reasons presently to appear, the outcome of this case depends on whether appellant has introduced substantial evidence to establish the usual wholesale quantities.

The court then held that statements in said affidavit to the effect that "the great majority of sales of matrix board to purchasers other than consumers were in quantities of 15,000 square meters or more" and "that the great majority of the sales for export to the United States were in quantities of 15,000 square meters or more" were conclusions of ultimate facts, unsupported by evidentiary facts, and, hence, insufficient to establish usual wholesale quantities. Since one of the essential elements in the proof of foreign and export value had not been established, the decision of the appellate division, dismissing the appeal for reappraisement, was affirmed.

In the case before me, the parties have stipulated that the price at which matrix board was sold did not vary with the quantity in which it was sold. This concession eliminates any question of usual wholesale quantities. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182. Thus, the specific element of both foreign and export value, proof of which was found to be insufficient in said *Brooks Paper Company* case, becomes an immaterial consideration in this action. In this respect, and to the extent that plaintiff in the present suit urges that there was no foreign value for the merchandise at bar, the two cases are distinguishable.

Nevertheless, the burden remains with the plaintiff to "meet every material issue involved in the case." To negative foreign value, which is plaintiff's intention here, the record must contain substantial evidence to establish that such or similar merchandise was not "freely offered for sale to all purchasers in the principal markets of the country from which exported in the * * * ordinary course of trade."

The only evidence before me with respect to the home market in Germany, the country of exportation, is the oral testimony of Treasury Representative Kruszewski, supplementing his written report, dated January 21, 1935. This witness testified and/or reported that he was

the Treasury representative for central Europe from 1931 until the outbreak of the war. On January 10, 1935, he visited Max Nitzsche & Co. of Obercarsdorf, Germany, the manufacturer and exporter of the merchandise at bar, to investigate sales of matrix board for consumption in Germany, in connection with consular invoice No. 3412, covering the merchandise at bar. He there interviewed a Mr. Lehmann, the manager, who supplied the regular books of account and other documents and records, and furnished additional information. He ascertained that an association or cartel fixed the prices and conditions under which manufacturers of matrix board sold their products. An investigation of the association revealed that contracts made after January 26, 1934, were made at cartel list prices, as indicated by the price list annexed to the report, the price for the qualities here involved of thicknesses ranging between 0.6 and 0.8 mm. being 0.80 reichsmark per square meter, less a cash discount of 2 per centum for payment within 30 days or 3 per centum for payment within 8 days.

According to the information the Treasury representative received, sales were made to only two classes of persons, to wit, consumers and dealers. The latter received a 15 per centum trade discount from the association price list, provided they signed the dealers' pledge (plaintiff's exhibit 4, exhibit B of the report) not to underbid the association's minimum prices, delivery, and payment terms. He found that the prices of this product did not vary with the quantity in which it was sold, but were affected by the status of the purchaser.

The representative testified that he did not make any independent investigation of the dealers. He merely accepted the association's statement of its recognized dealers and copied from its records a list of sales made on or about the date of shipment of the merchandise described on the invoice. He discovered that these were so-called call-off sales, that is, deliveries made on call against large contracts.

Plaintiff's contention that there was no statutory foreign value rests upon a twofold theory. It is first urged that, since the prices for home consumption were determined by the status of the purchaser, rather than the quantity sold, there was no price at which the merchandise was freely offered for sale to all purchasers within the contemplation of the foreign value provision, citing *Glanson Co.* v. *United States*.

Plaintiff also argues that the pledge of the dealers not to offer the products for sale at prices, terms of delivery, and payment lower than the minimum prices specified in the association's price list is "a form of restriction and control which according to settled law deprives the market of that freedom essential to the existence of a dutiable value,"

and the case of *United States* v. *Empire Distributors*, 33 Cust. Ct. 568, A. R. D. 47, is cited to substantiate that argument.

The cited *Glanson Co.* case was reviewed by a division of this court, of which the writer of this opinion is a member (31 Cust. Ct. 473, A. R. D. 33). We there affirmed the principle that, where sales are made at prices which vary solely with respect to the category of the purchaser, the statute does not authorize the selection of any one price as the freely offered price to all purchasers.

The evidence in the instant case clearly calls for the application of this principle. The present record shows but two classes of customers for the purchase of matrix board in Germany. These were, respectively, dealers and consumers. Each was charged a price determined solely by his status in the trade. Irrespective of quantity, consumers could not buy at the price paid by dealers. The latter obtained more favorable terms by virtue of category and upon agreement not to resell at prices, terms of delivery, and payment lower than those specified in the association's price list. It is unrealistic to suppose that dealers would or could conduct their business by any other method than that deriving from the pledge with its consequent discount. Neither the price to consumers nor the price to dealers may, therefore, be said to be one freely offered to *all* purchasers in the principal markets of Germany, within the intendment of the foreign value provision of the tariff law.

Moreover, since, presumptively, dealers purchase for resale, whereas consumers purchase for their own use and enjoyment, the imposition of terms and conditions upon which resales may be made is, in fact, as urged by plaintiff, "a form of restriction and control which according to settled law deprives the market of that freedom essential to the existence of a dutiable value." The case of *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, and the authorities relied upon therein, support this proposition.

Were these the sole considerations in the case, I should be inclined to the view that foreign value had been successfully negatived, and proceed to an analysis of the proof with respect to export value. However, as pointed out by counsel for the Government, under the provisions of section 402 (c) of the Tariff Act of 1930, *supra*, in effect at the time of the importation at bar, sales for exportation to countries other than the United States, of such or similar merchandise, were pertinent elements in determining foreign value. *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. (Customs) 214, T. D. 48060. There is no evidence before me as to such sales. An essential element of proof with respect to foreign value is, therefore, lacking.

In view of the provisions of law in effect at the time of importation and appraisement of the merchandise at bar, and, under the authority

of *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, I am authorized to dismiss this appeal for failure of proof. Nevertheless, there are considerations here which, in my opinion, warrant an alternative procedure.

The rule of law expressed in *United States* v. *Livingston & Southard, Inc.*, *supra*, has, by the enactment of an amendment to section 402 (c), *supra*, in the Customs Administrative Act of 1938, become obsolete. Existing law defines foreign value in part as the freely offered price "for home consumption" and, hence, sales to countries other than the United States are no longer essential elements of proof in establishing or negativing foreign value. It is apparent that many years have now elapsed since this change of law became effective. That counsel may have overlooked the requirements of proof under a statute obsolete, except for a few isolated cases of merchandise imported prior to the change, is understandable. Under these circumstances, it would not be consistent with the fair administration of justice to dismiss the instant appeal for failure of such proof.

Accordingly, I am impelled to set aside the submission herein and to restore this case to the calendar to afford counsel for the plaintiff an opportunity to supply the omissions to which allusion has heretofore been made. It is so ordered.