(Reap. Dec. 8793)

GLANSON CO. *v.* UNITED STATES

Entry No. 792815.

(Order dated April 25, 1957)

*Michael Stramiello, Jr.*, for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, trial attorneys), for the defendant.

MOLLISON, Judge: This case is before me on remand from the second division of this court. The account of the proceedings to the time of the order of remand is contained in the writer's original opinion, reported in *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, and in the opinion of the second division reported in *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A. R. D. 33.

Briefly stated, the writer found, from the evidence offered, that at the manufacturer's level there was no price at which such (there being no issue as to similar) merchandise was freely offered for sale to all purchasers, within the meaning of the foreign value statute, and entered an order of dismissal of the appeal for reappraisement on the ground that the record did not support a finding of foreign or any other value provided by the statute, section 402, Tariff Act of 1930, as amended. Both parties had contended for a finding of foreign value of "such" merchandise.

On appeal, the second division pointed out that the record showed that the merchandise had been sold for home consumption in the foreign market in wholesale quantities at at least one level below that of the manufacturer, to wit, at the wholesalers' level, and, even though evidence as to whether sales at the wholesalers' level met the statutory requirements was not in the record, it was held that, until it was established that such sales did not meet such requirements, the categorical denial of the existence of foreign value could not be asserted. The court ruled, therefore, citing certain appellate authority, that the order of dismissal was erroneous and that a finding of value should have been made.

At the time of the hearing before him under the order of remand, the writer permitted the taking of additional evidence, over the objection of counsel for the Government, which then, as now, contended that the decision of the second division did not provide for the taking of additional evidence, but required decision upon the record previously made.

In its decision, the second division seemingly approved the holding of the writer that, *at the manufacturer's level* of sales, there was no

price at which the merchandise was freely offered for sale within the requirements of the statute, i. e., there was no price at which merchandise, such as that in issue, was freely offered for sale to "all" purchasers. Put another way, the second division found no error in the writer's holding that foreign value could not be predicated upon sales or offers for sale *at the manufacturer's level.*

From a reading of the opinion of the second division, the writer concludes that the division did not intend that this court was required to find the values of the merchandise to be those returned by the appraiser (as now contended by the Government), but intended to leave the determination of the proceedings to be taken after the remand to the discretion of this court.

This view is supported by the fact that the values returned by the appraiser are shown by the evidence to have been erroneous, inasmuch as they were based upon the price *at the manufacturer's level* at which the manufacturer offered the merchandise for sale to retailers, other than chain and department stores. Since the remand was obviously made with the purpose that this court should be guided by the principles expressed in the opinion of the second division, it could hardly have been the purpose of the division to require that this court find values which had been demonstrated to have been erroneous. The ruling against the position taken by the Government, as embodied in its objection at the trial and reiterated in the brief filed in its behalf, to the taking of further evidence is, therefore, adhered to.

It having already been established that no export value, within the requirements of the statute, section 402 (d), existed for the merchandise involved, by reason of the fact that the plaintiff had the exclusive United States right to purchase the cribbage boards manufactured by the exporter, the plaintiff, on remand, reiterated its original contention that, if foreign value for the merchandise, within the definition of section 402 (c), as amended, existed, it was represented by the prices at which the manufacturer sold merchandise such as that here involved to wholesalers and jobbers. For the reasons expressed in the writer's original opinion, Reap. Dec. 8182, and seemingly approved by the second division in A. R. D. 33, that contention is overruled.

In the alternative, plaintiff offered evidence for the purpose of establishing that at the level below that of the manufacturer, to wit, at the wholesalers' level of sales, the offers did not meet the requirements of the statute in that (1) they were made to different classes of purchasers at different prices, depending upon the category of the purchasers, and (2) they were made at prices "suggested" by the manufacturer. The "suggested" prices are claimed to have been tantamount to controlled or fixed prices.

The evidence with respect to sales or offers for sale at the wholesalers' level for home consumption in Canada is contained in plaintiff's exhibit 6, an affidavit of W. Elliot Thomas, an assistant departmental manager of a Canadian wholesaler, which purchased cribbage boards such as those involved from the manufacturer for resale in Canada.

Mr. Thomas' affidavit is to the effect that his firm resold the cribbage boards purchased from the manufacturer to the following classes of purchasers: (1) Chain and departmental stores and (2) other retail stores. He further stated that the prices at which such boards were sold were governed by the class to which the purchaser belonged, regardless of quantity of purchase, and were different for each class of purchaser, and that the foregoing practice was followed by all other wholesalers who resold cribbage boards obtained from the manufacturer in this case.

From the foregoing, it appears that the same situation, with respect to the prices at which the merchandise was offered for sale, obtained at the wholesalers' level as was found to bar a finding of foreign value at the manufacturer's level. Inasmuch as the only other dealers for home consumption in the foreign market of merchandise such as that here involved—chain and department stores and other retail stores— resold only at retail and not in wholesale quantities, it follows that at no level in the foreign market were there made offers for sale of such merchandise in the usual wholesale quantities at a freely offered price to all purchasers, and, consequently, no foreign value, within the meaning of the statute, existed for such merchandise.

The situation as to similar merchandise and as to export value for such or similar merchandise has already been treated in the prior opinion of the writer and the findings approved by our appellate division. (31 Cust. Ct. at page 474.) These findings establish that no foreign value, within the meaning of the statute, existed for merchandise similar to that here involved, and that no export value, within the meaning of the statute, existed for such or similar merchandise.

With the purpose of establishing that no United States value, within the meaning of the statute (section 402 (e), as amended), existed, plaintiff offered the testimony of the partner of the importing firm who had charge of importation and selling of the involved merchandise. The testimony of this witness was to the effect that the merchandise was offered for sale in the United States to three classes of purchasers at prices which varied with the category of the purchaser, and, moreover, that the retail prices of the involved cribbage boards were fixed by the importer.

The fact that the importer sold the merchandise in the United States market at prices which varied with the category of the purchaser

would not, standing alone, establish a lack of United States value, within the meaning of the statute. As pointed out by the appellate division in its decision in this case, the mere fact that the seller at the highest level of sales so offers the merchandise does not establish an absence of statutory value, unless it also be shown that similar practices prevailed at the lower levels of offers for sale in usual wholesale quantities. The principle of that decision, although enunciated with respect to a foreign value situation, applies as well to the United States value.

The evidence shows that one of the classes of trade to whom the importer sold was jobbers. By definition, jobbers are those who sell to other dealers, middlemen, and, presumably, would sell in wholesale quantities. Consequently, unless proof were adduced showing a lack of offer to all purchasers at a single price at the jobbers' level, the proof of such practice at the importer's level would not establish absence of United States value.

However, plaintiff also offered proof establishing that the importer fixed the retail sales prices of the imported cribbage boards and maintained the practice by refusing to sell to any violators of the policy. These facts bring the case within the ruling expressed in *United States* v. *Empire Distributors, Successor to Empire Wholesalers*, 33 Cust. Ct. 568, A. R. D. 47, holding that such restriction upon the resale of merchandise bars a finding of a free offer, under the valuation statute.

A lack of statutory United States value for such merchandise is thus established and such finding is, therefore, made.

The evidence as to cost of production is contained in plaintiff's exhibit 8, the affidavit of P. Roug-Jensen, who identified himself therein as the plant manager of the manufacturer and exporter, having access to sales and cost records thereof. The affiant set forth the cost of materials, and of labor and processing, and the general expenses, packing, and profit, shown by the said records as applicable to the two sizes of cribbage boards here involved, and added the following statement:

That the profits set forth above represents the profits realized on the cribbage board sold at prices reflecting the greatest volume of all cribbage board sales made by ACME RULER & ADVERTISING CO. LTD., and are not less than the profits which are ordinarily added by manufacturers of merchandise of the same class or kind in Canada.

In the brief filed in its behalf, counsel for the defendant points out that the foregoing does not meet the statutory requirements with respect to profits, in that it refers to the profits of the particular manufacturer, with respect to merchandise such as that here involved, whereas the statute calls for the "profit which ordinarily is added, in

the case of merchandise of the *same general character* as the particular merchandise under consideration, *by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.*" [Italics mine.]

There is nothing in the affidavit which could be considered a foundation for the affiant's statement that "the profits set forth above * * * are not less than the profits which are ordinarily added by manufacturers of merchandise of the same class or kind in Canada," and specific objection to the statements in the affidavit was taken, on the ground that they represented conclusions and hearsay.

The requirements for the establishment of profit under section 402 (e) of the Tariff Act of 1922 (reenacted as section 402 (f) of the present act) were set forth in the case of *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, at page 50, as follows:

* * * it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. * * *

See also the same opinion, page 51, where the court said:

We think the words "merchandise of the same general character," as used in said paragraph 4, are not synonymous with the words "such or similar merchandise" as used in paragraph 2 of said section 402 (e).

It is not suggested that there is only one method of establishing the profit, called for by section 402 (f), but it appears to the writer that the proof contained in plaintiff's exhibit 8 falls short of establishing the elements specified in the statute.

The situation is very like that which obtained in the recent case of *A. N. Deringer, Inc.* v. *United States*, the writer's opinion in which is reported in 37 Cust. Ct. 591, Reap. Dec. 8708.

There, as here, there had been a deficiency in proof of profits under the cost of production statute, and, as in this case, the matter had previously been twice restored to the calendar for further evidence. The writer pointed out, however, that, inasmuch as the basis upon which the value returned by the appraiser was made had been demonstrated to have been erroneous, as in this case, the interests of justice required restoring to the calendar "for the sole purpose of permitting the introduction of evidence by both parties with respect to the addition for profit called for by paragraph (4) of the cost of production statute, section 402 (f) of the Tariff Act of 1930."

A similar order will issue in this case.