**Reap. Dec. 8996.—**
——W. T. Grant Company *v.* United States.

MEMORANDUM TO ACCOMPANY ORDER

JOHNSON, Judge: The appeals for reappraisement, listed in schedule "A," attached hereto and made a part hereof, consolidated at the trial, involve items of chinaware and earthenware exported from England on various dates between December 19, 1953, and April 29, 1955.

These cases have been submitted on a stipulation, agreed to at the trial, reading as follows:

Mr. CARTER: May it please the Court, the merchandise the subject of these appeals consists of chinaware and also of earthenware imported from England.

In each case the merchandise was appraised on the basis of an alleged foreign value, represented by the prices at which the merchandise was sold to retailers for consumption in England.

The merchandise was also offered and sold to wholesalers for consumption in England, who were granted an additional discount.

Because of these two classes of purchasers we claim that there is no statutory foreign value for this merchandise, and that the merchandise is dutiable on the basis of export value.

I offer to stipulate that the merchandise consists of china and also of earthenware imported from England.

I further offer to stipulate that at or about the time of exportation of each of the instant shipments such or similar merchandise was freely offered for sale and sold in the principal markets of England for domestic consumption to two classes of purchasers, and that the price at which the merchandise was sold depended upon the type of business conducted by the purchaser;

That purchasers classified as "wholesalers" purchased this merchandise in the usual wholesale quantities and in the ordinary course of trade at the units of value shown on the invoices, with additions or deductions as follows, while purchasers classified as "retailers" paid the invoice unit prices, with additions or deductions as follows, in the usual wholesale quantities and in the ordinary course of trade:

The importer in every case is W. T. Grant.

| | Price to wholesalers and claimed export value | Price to retailers and appraised foreign value |
|---|---|---|
| 240115–A | Invoice unit prices plus 25 per cent minus 5 per cent minus 2½ per cent plus packing | Invoiced unit prices plus 25 per cent minus 2½ per cent plus packing |
| 240116–A | Invoice unit prices plus 25 per cent minus 5 per cent minus 2½ per cent plus packing | Invoiced unit prices plus 25 per cent minus 2½ per cent plus packing |

| 240118–A | Invoice unit prices | Invoiced unit prices |
|---|---|---|
| | plus 25 per cent | plus 25 per cent |
| | minus 5 per cent | minus 2½ per cent |
| | minus 2½ per cent | plus packing |
| | plus packing | |
| 240267–A | Invoice unit prices | Invoiced unit prices |
| | plus 25 per cent | plus 25 per cent |
| | minus 5 per cent | minus 2½ per cent |
| | minus 2½ per cent | plus packing |
| | plus packing | |
| 240475–A | Invoice unit prices | Invoiced unit prices |
| | plus 25 per cent | plus 25 per cent |
| | minus 5 per cent | minus 2½ per cent |
| | minus 2½ per cent | plus packing |
| | plus packing | |
| 240117–A | Invoiced unit prices | Invoiced unit prices |
| | less 15 per cent | less 15 per cent |
| | less 5 per cent | less 2½ per cent |
| | less 5 per cent | plus packing of |
| | plus packing of | 7½ per cent |
| | 7½ per cent | |
| 242438–A | Invoiced unit prices | Invoiced unit prices |
| | less 15 per cent | less 15 per cent |
| | less 5 per cent | less 2½ per cent |
| | less 5 per cent | plus packing of |
| | plus packing of | 7½per cent |
| | 7½ per cent | |
| 251867–A | Invoice unit prices | Invoice unit prices |
| | plus 33⅓ per cent | plus 33⅓ per cent |
| | minus 5 per cent | minus 2½ per cent |
| | minus 2½ per cent | plus packing |
| | plus packing | |
| 261100–A | Invoice unit prices | Invoice unit prices |
| | minus 5 per cent | minus 2½ per cent |
| | minus 2½ per cent | plus packing |
| | plus packing | |

I further offer to stipulate that the foregoing prices were freely offered to all purchasers in the respective classifications, but that no retailer was offered or could secure the discounts that were freely offered to all wholesalers.

I further offer to stipulate that such or similar merchandise was, at the time of exportation, freely offered and sold in the principal markets of England for exportation to the United States to all persons who wished to buy in the usual wholesale quantities and in the ordinary course of trade at the prices above mentioned, which were available for home consumption to wholesalers.

MR. AUSTER: I have consulted with Examiner Gross and with Mr. Carter, at your Honor's suggestion, and we are happy you made it, and we find that we are now able to stipulate more than one case, as we did yesterday.

The figures which Mr. Carter has now read into the record are correct in so far as each of those cases is concerned, including yesterday's case, which is 240115–A, and with the consent of Mr. Gross, I, as representative of the Government, so stipulate, as offered.

Plaintiff claims that there were no statutory foreign values for this merchandise, because there was no one price or set of prices at which

such or similar merchandise was freely offered and sold to all purchasers for home consumption in England, but that there were statutory export values for such or similar merchandise and that such values represented the proper basis for the appraisement of this merchandise.

Defendant contends that the prices at which the merchandise was offered and sold to retailers for home consumption in England are the statutory foreign values of the merchandise on the ground that all purchasers could have bought at those prices.

Since the merchandise was offered and sold to both classes of purchasers in the usual wholesale quantities and in the ordinary course of trade, and the prices did not vary according to quantity, the statutory element of "usual wholesale quantities" is not a material issue. *United States* v. *E. H. Corrigan*, 36 Cust. Ct. 639, A. R. D. 67, and cases cited.

It is well settled that the price at which merchandise is offered and sold to a limited number of favored customers or to the retail trade only or to wholesalers only is not proper evidence of market value, since such price is not that at which the merchandise is freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade. *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; *United States* v. *H. W. Robinson & Co., State Forwarding Co., and Edgar S. Bibas*, 19 C. C. P. A. (Customs) 274, T. D. 45436. Where sales are made at prices which vary only with respect to the category of the purchaser, the statute does not authorize the selection of any one price as the freely offered price to all purchasers. *United States* v. *Empire Distributors, Successor to Empire Wholesalers*, 33 Cust. Ct. 568, A. R. D. 47; *United States* v. *F. W. Myers Company, Inc. (F. J. Leggett & Co.)*, 33 Cust. Ct. 578, A. R. D. 49; *American Express Co.* v. *United States*, 37 Cust. Ct. 585, Reap. Dec. 8707.

In *Adolph Goldmark & Sons Corp.* v. *United States*, 22 C. C. P. A. (Customs) 358, T. D. 47378, where merchandise was sold to four classes of purchasers at varying discounts, it was held that since customers could not receive the 7½ per centum discount, unless they could purchase large quantities regularly, the price, less that discount, was not the market value within the meaning of the tariff act. The court found that everyone could buy at a discount of 2½ per centum and held that that price represented the foreign value of the merchandise.

In the instant case, it is clear that the prices at which this merchandise was offered to purchasers classed as "wholesalers" were not prices at which it was offered to all purchasers since "no retailer was offered or could secure the discounts that were offered to all wholesalers." Furthermore, it was stipulated that "the foregoing prices

were freely offered to all purchasers *in the respective classifications.*" [Italics supplied.] In other words, neither set of prices was offered to all purchasers generally. It is, of course, unrealistic to suppose that wholesalers would, in the ordinary course of trade, purchase at the higher prices offered to retailers. *Glanson Co.* v. *United States,* 29 Cust. Ct. 508, 511, Reap. Dec. 8182 (reversed and remanded on other grounds, 31 Cust. Ct. 473, A. R. D. 33); *American Express Co.* v. *United States, supra.*

I conclude that this merchandise was not freely offered by the manufacturer to all purchasers in the usual wholesale quantities and in the ordinary course of trade at any one set of prices and that neither the prices at which the merchandise was offered to wholesalers nor the prices at which it was offered to retailers represent the foreign values, as said value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

However, this finding does not lead to a determination that no foreign value could have existed for this merchandise. *Glanson Co.* v. *United States,* 31 Cust. Ct. 473, A. R. D. 33. In that case, the court pointed out (p. 475):

The proven fact is that the wholesale trade constituted one of the categories of purchasers to whom the manufacturer sold its wares. Whether that class of trade offered to sell cribbage boards at prices which would, consistent with the provisions of the foreign value statute, enable the selection of a freely offered price to all purchasers for home consumption, is not of record. Until such sales are ruled out, the categorical denial of the existence of a foreign value may not be asserted. We cite the case of *United States* v. *H. W. Robinson & Co., State Forwarding Co., & Edgar S. Bibas,* 19 C. C. P. A. (Customs) 274, T. D. 45436, as authority for the proposition that resale prices of wholesalers are acceptable as a basis from which to derive a foreign value, if such prices accord with the statutory requirements of being freely offered for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

This statement applies equally well to the facts in the instant case.

Since the plaintiff has not negatived the existence of a foreign value based on the resale prices of wholesalers, it has not met the burden of proving the correct dutiable value of the merchandise. In such circumstances, the appraised value could well be sustained. *Kobe Import Co.* v. *United States,* 42 C. C. P. A. (Customs) 194, C. A. D. 593. However, since both parties have presented this case on the theory that the only issue is whether the appraised values, based on the prices at which the merchandise was sold to retailers for home consumption in England, or the prices at which the merchandise was sold for export, were the correct dutiable values, I find that the ends of justice will best be served by restoring the case to the calendar for further proof as to the prices and conditions at which this merchandise was offered and sold by wholesalers.

It is so ordered.