(A. R. D. 87)

ARIS GLOVES, INC. *v.* UNITED STATES

Entry No. 848.

Second Division Appellate Term

(Decided June 5, 1958)

*Mary Rehan* for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment, dated December 28, 1956 (38 Cust. Ct. 557, Reap. Dec. 8718), wherein and whereby the presumptively correct appraised values of certain imported gloves were sustained. Said values constituted an advance of approximately 25 per centum over the entered unit values.

It appears from the record in this case that both the entered and the appraised values purport to represent export value, as that value is defined in section 402 (d) of the Tariff Act of 1930,[1] it having been

---

[1] Said section 402 (d) provides as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

stipulated that the former were the prices paid for the merchandise at bar and available to any other wholesaler or jobber, the latter being the prices at which retailers and any other class of purchaser could buy the merchandise.

It was also agreed that there was no foreign value and that prices did not vary with quantities purchased.

It further appears from the record before us, which is largely composed of oral agreements of counsel, not always consistent with each other, nor with the documentary proof, that, at all times pertinent hereto, an allied governmental agency, known as the Joint Export-Import Agency and generally referred to as JEIA, exercised some measure of control over all transactions between the German manufacturer of the subject gloves and all American purchasers thereof.

The exact nature of the function and powers of JEIA has by no means been clearly shown in the instant record, but it seems to have been conceded that, although plaintiff herein negotiated with the German manufacturer for the purchase of the gloves, the terms of the contract, with particular reference to prices, were subject to JEIA approval.

Whether other buyers similarly conducted their business with the manufacturer, or negotiated directly with JEIA for the purchase of gloves in Germany, is also not clearly revealed. Counsel for appellant has taken the position that there were but two purchasers from the manufacturer, namely, Aris Gloves, Inc., and JEIA, both purchasing at prices reflected by the entered values, and that JEIA, in turn, sold to all other American purchasers. The consular report, in evidence as defendant's exhibit A, appears to indicate that the manufacturer sold the gloves and freely offered them for sale to all purchasers for export to the United States, but that the rate of exchange of the currency of purchase was fixed by JEIA.

In any event, there is no dispute over the fact that the manufacturer did not vary its prices either with the quantity sold or with the status of the purchaser. Its prices in German reichsmarks were the same to all who bought, regardless of any other considerations. However, no purchaser remitted reichsmarks for the goods bought. Each paid in dollars at a rate of exchange established by JEIA for his respective category. Those designated as wholesalers or jobbers, in which class appellant fell, paid for the gloves upon the basis of an average rate of 18 cents per reichsmark. Retailers and all others were required to pay an average of 24 cents per reichsmark.

In this disparity in conversion ratio lies the difference between the appraised and entered values. Counsel for appellant contends that the reichsmark price was the price at which the gloves were freely sold to all purchasers for exportation to the United States, and that JEIA's manipulations changed the price of American currency, rather than the value of the goods purchased. Accordingly, it is urged that

the price at which the merchandise was offered to appellant by the manufacturer is the true export value.

The difficulty with this position is that the currency of sale was dollars and not reichsmarks, for, as found by the trial court, the intervention of JEIA transformed the manufacturer's apparent free offer to all purchasers at a fixed price in German reichsmarks into a conditioned offer in American dollars, determined solely by the category of the purchaser.

Inasmuch as no contract negotiated by the manufacturer could be fulfilled except upon terms of payment superimposed by JEIA, there can be no error in this finding. Without proof that JEIA was a purchaser from the manufacturer, in view of the consular report, and the admission of appellant's counsel that JEIA did not have title, it seems clear that offers flowed from the German manufacturer to all American purchasers through channels charted by JEIA. The policy of JEIA, not that of the manufacturer, determined the character of the market in Germany, in respect to sales for exportation to the United States.

Without doubt, that policy contemplated sales and offers for sale at prices determined solely by the category of the purchaser. Under circumstances such as these, the following observations in the case of *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, affirmed in principle, 31 Cust. Ct. 473, A. R. D. 33, are deemed to be controlling:

But there is nothing in the statute as written which would support the selection of one value and the discarding of all others where merchandise is offered for sale at a series of prices depending, not upon the quantity purchased, but upon the category of the purchaser. When the question of usual wholesale quantities is not a factor, as in the case at bar, the statute does not have left therein a word which would suggest selection of one price out of several prices, as does the word "usual" in "usual wholesale quantities." Contrariwise, the statute specifically calls for that price at which the merchandise is offered to "all" purchasers.

In truth and in fact, such a price did not exist under the facts in the case at bar. The price at which the merchandise was offered for sale to retailers was no more the price at which it was offered for sale to "all" purchasers than was the price to wholesalers or the price to chain and department stores. From each class of purchasers the other classes were excluded, and this is as true of the retailers class as of the wholesalers and chain and department store classes.

This being the case, the writer is of the opinion, and finds as matter of fact that at the time of exportation of the merchandise here involved there existed no—

* * * price * * * at which such * * * merchandise [was] freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade * * *.

and consequently holds as matter of law that no foreign value for merchandise such as that here involved existed within the meaning of the statute. * * *

Although made with reference to foreign value, the foregoing rule applies with equal vigor in respect to export value, there being no

essential difference between these two bases of value, so far as the issues here are concerned.

There is no other evidence in the record from which values other than those returned by the appraiser can be found. The appraiser's return of value is clothed by statute with the presumption of correctness, and the burden rests upon the party challenging it, to prove otherwise. In the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, the scope of the burden was thus defined:

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. * * *

The parties have stipulated that there was no foreign value for such or similar merchandise. The evidence establishes that there was no price at which such or similar merchandise was freely offered for sale to all purchasers for exportation to the United States. No attempt has been made to show any other statutory basis of value. Consequently, it must be held that appellant has failed to sustain the burden which it has assumed. The presumptively correct appraised values have not been effectively upset.

In affirming the judgment of the trial court, we adopt with approval the findings and conclusions embodied in the decision accompanying it and reading as follows:

(1) That the involved merchandise consisted of gloves exported from Germany on or about October 2, 1948.

(2) That at or about that time there was no price at which such or similar merchandise was freely offered for sale for home consumption in Germany.

(3) That in the ordinary course of trade at or about that time the actual offers of such or similar merchandise in the foreign market for sale for exportation to the United States were made in United States dollars through the Joint Export-Import Agency of the allied Government.

(4) That the offered price in each case depended upon the category of the purchaser.

(5) That no other evidence which would support any other findings of fact was offered by the parties.

\* \* \* \* \* \* \*

I. That there was no foreign value as defined in section 402 (c), as amended, of the Tariff Act of 1930 for the merchandise at bar.

II. That the parties have failed to offer evidence which would support a finding of value upon any other statutory basis.

III. That, under such circumstances and in accordance with the statutory presumption set forth in 28 U. S. C. § 2633, the values returned by the appraiser are the correct values for the merchandise.

Judgment will be entered accordingly.